## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX COUNTY, SS.**                    **CAMBRIDGE DISTRICT COURT**

|  |  |
|---|---|
| ROBERT A. DOANE, ) | |
| ) | |
| Plaintiff, ) | Docket #: _____ |
| v. ) | |
| ) | |
| TOCO WARRANTY CORP., ) | |
| ) | **COMPLAINT** |
| WARRANTECH AUTOMOTIVE, INC, ) | |
| ) | |
| WESCO INSURANCE COMPANY, ) | |
| ) | |
| JOHN and/or JANE DOE(s) 1-100, and ) | |
| ) | |
| XYZ Companies 1-100. ) | |
| ) | |
| Defendants. ) | |
| ) | |

### INTRODUCTION

1.     As was forcefully stated by Senator Hollings, the sponsor of the Federal Telephone Consumer Protection Act ("TCPA"), "[c]omputerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821–30,822 (1991). A new report, spotted by the *Washington Post,* reveals that Americans received 26.3 billion robocalls in 2018, up 46 percent from 2017.[1] The FTC reports that in 2019, it received 5.4 million complaints about unwanted calls, 71% of which were robocalls.[2]

2.     Robert A. Doane's ("Plaintiff"), cellphone number is registered on the federal and Massachusetts do-not-call registries. Plaintiff is the primary caretaker and power of attorney for his elderly parents and stepmother with dementia, he has several other responsibilities requiring

---

[1] https://www.washingtonpost.com/technology/2019/01/29/report-americans-got-billion-robocalls-last-year-up-percent/?noredirect=on

[2] https://www.consumer.ftc.gov/blog/2019/10/what-do-not-call-complaints-are-telling-us

his focus and attention, and he has a medical condition causing chronic pain and a sleep disorder, often requiring sleep during the day. Plaintiff does not want to be bothered by unsolicited sales calls, as he has clearly expressed to the world, since such calls cause him substantial disruption and harm. Yet, defendant Toco Warranty Corp. ("Toco Warranty"), through what appear to be foreign telemarketing agents,  repeatedly called Plaintiff's cellphone, not less than seven (7) times, while concealing their true identity, and using other illegal and deceptive means, e.g., automatic telephone dialing systems ("ATDS"), and fake caller identifications. The only way Plaintiff could identify the offenders was to feign interest, after which Toco Warranty called directly exclusively on behalf of defendants Warrantech Automotive, Inc. ("Warrantech") and Wesco Insurance Company ("Wesco"), exposing these Defendants as responsible.

3.      Defendant Toco Warranty called Plaintiff directly a total of seventeen (17) times, without consent. Plaintiff sent defendants Toco Warranty and Warrantech demand letters.  Astonishingly, Toco Warranty responded alleging Plaintiff provided his consent to be called on their website without any basis to support such an allegation. In fact, Plaintiff did not provide his consent on Toco Warranty's website. When Plaintiff asked Toco Warranty for specifics regarding the allege consent, they provided an IP address and email, neither of which was Plaintiff's In fact, the IP address was from an anonymizer, and the email was not even valid. If in fact such alleged consent was actually generated, someone posed as Plaintiff, as a proactive means to fraudulently defend against anyone who complains.

4.      The Defendants' conspired to engage in and benefited from the illegal telemarketing, and the Defendants' conduct was wrongful, illegal, harassing, caused Plaintiff interruption, continuing frustration, distress, and their proffered claim of an opt in in response to Plaintiff's complaint is fraudulent, unfair and deceptive, and in any event, as it is alleged, is insufficient as a defense.

## SUMMARY OF RELIEF SOUGHT

5.      Plaintiff seeks from the Defendants actual, statutory, and punitive damages for knowing and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA"), the Massachusetts Telephone Solicitation Act, G.L. c 159C, et seq. ("MTSA"), actual damages for invasion of privacy and intrusion upon seclusion, in violations of G.L. c. 214, § 1B, et seq., violations of the Massachusetts Consumer Protection Act, G.L. c. 93A, et seq. ("MCPA"), civil conspiracy, and in the alternative, negligent hiring and retention.

## LEGAL BASIS FOR THE FEDERAL TELEMARKETING CLAIMS

6.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

7.     Specifically, the TCPA restricts telephone solicitations (i.e., telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

8.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated the established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

9.     As of October 16, 2013, unless the recipient has given prior express written consent,[3] the TCPA and Federal Communications Commission ("FCC") regulations promulgated pursuant to the TCPA mandate the follow:

    (i)        Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

    (ii)       Requires solicitors provide their name, the name of the person or entity on whose behalf    the call is being made, and a telephone number or address at which that person or entity may be contacted.

---

[3] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarking messages to be delivered." 47 C.F.R. § 64.1200(f)(8)

(iii)    Prohibits solicitations to residences that use an artificial voice or a recording.

(iv)    Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

(v)    Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

(vi)    Prohibits autodialed calls that engage two or more lines of a multi-line business.

(vii)    Prohibits unsolicited advertising faxes.

(viii)    Prohibits certain calls to members of the Do-Not-Call Registry.

10.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the TCPA, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

11.    Accordingly, an entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

12.    There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

13.    <u>More Than One Call within Any 12-Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

14.     <u>Calls to Phones on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." See 47 C.F.R. § 64.1200(c).

15.     <u>Including Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

16.     <u>The Affirmative Defense of Prior Express Consent</u>. The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("Satterfield")). "Prior express consent is an affirmative defense for which the defendant bears the burden of proof." See *Grant v. Capital Management Services, L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); see also *Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

17.     <u>Telemarketers Must Maintain a List of Persons Requesting Not to Receive Calls</u>. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made) and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

## <u>LEGAL BASIS FOR THE MASSACHUSETTS TELEMARKETING CLAIMS</u>

18.     In 2002, Massachusetts enacted the Telemarketing Solicitation Act, G. L. c. 159C, inserted by St. 2002, c. 265, § 1 ("MTSA")

19.      As the Supreme Judicial Court noted, "We presume that the Massachusetts Legislature was aware of the TCPA when it enacted G. L. c. 159C, which itself regulates telemarketing solicitation… General Laws c. 159C, § 13, provides that the 'remedies, duties, prohibitions and penalties provided in this chapter shall not be exclusive and shall be in addition to all other causes of action, remedies and penalties provided by law.' '[O]ther causes of action, remedies, and penalties' would surely encompass violations of Federal law."

20.      Calls registered with the FTC are automatically included in the Massachusetts do-not-call registry subject to the MTSA, G.L. c. 159C §7.

21.      The MTSA states that "A telephone solicitor shall not make or cause to be made an unsolicited telephonic sales call to a consumer: (i) if the consumer's name and telephone number appear on the then current quarterly no sales solicitation calls listing made available by the office under section 2; (ii) to be received between the hours of 8:00 p.m. and 8:00 a.m., local time, at the consumer's location; (iii) in the form of electronically transmitted facsimiles; or (iv) by use of a recorded message device." G.L. c. 159C § 3.

22.      The MTSA also prohibits spoofing, which displaces an actual caller ID with a false one. Specifically, the MTSA states in relevant part, "[n]o telephone solicitor shall intentionally cause to be installed or shall intentionally use a blocking device or service to circumvent a consumer's use of a call identification service or device. G.L. c. 159C § 4.

23.      The MTSA further states in relevant part, "A person who has received more than 1 unsolicited telephonic sales call within a 12–month period by or on behalf of the same person or entity in violation of this chapter may: (i) bring an action to enjoin the violation; (2) bring an action to recover for actual monetary loss from such knowing violation or to receive not more than $5,000 in damages for such knowing violation, whichever is greater; or (iii) bring both such actions." G.L. c. 159C § 8(b).

24.      The regulations promulgated under the MTSA, 201 CMR 12, require telemarketers to Massachusetts residents to register with the Office of Consumer Affairs and Business Regulation before making telephone solicitations to Massachusetts residents, and without so registering, such

solicitations violate the MTSA. In fact, without so registering, it is not even possible to obtain the Massachusetts do-not-call registry, to ensure solicitations are not made to those on it.

25.    The regulations promulgated under the MTSA state in relevant part that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers must institute procedures for honoring the list of Massachusetts consumers who have elected not to receive unsolicited telephonic sales calls in compliance with G.L. c. 159C and 201 CMR 12.00 et seq." 201 CMR 12.02 (6).

26.    The regulations promulgated under the MTSA also state in relevant part, "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers shall, at the beginning of such call, disclose [(b) the correct name of the telemarketing company that employs the individual telemarketer who is making the call; [and] (c) the correct name of the ultimate seller whose goods or services are being offered by means of the telemarketing call] … within the first minute of a telephonic sales call …" 201 CMR 12.02 (7).

## CONSENT MUST COMPLY WITH THE E-SIGN ACT AND THE UETA

27.    The FCC recognized, pursuant to the E-SIGN Act, consent obtained via an "email, Web site form, text message, telephone keypress, or voice recording" is sufficient so long as the other requirements (e.g. mandatory disclosures, identification of the phone number, clear authorization by the person providing consent, etc.) are met. 77 Fed. Reg. 34233 (June 11, 2012).

28.    The Uniform Electronic Transactions Act ("UETA"), [4] enacted by forty-seven states, including Massachusetts (G.L. c. 110G) validated the use of an "electronic signature," which is defined as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." UETA § 2(8).[5]

29.    The UETA, and G.L. c. 110 provides that:

    (a) An electronic record or electronic signature is attributable to a person if it was
        the act of the person. The act of the person may be shown in any manner,

_____

[4] Available at http://www.uniformlaws.org/shared/docs/electronictransactions/ueta_final_99.pdf
[5] Those states that have not adopted the UETA (such as Illinois and New York) have implemented similar statutes validating e-signatures.

including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

(b) The effect of an electronic record or electronic signature attributed to a person under subsection (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

UETA § 9; G.L. c. 110G § 9 (emphasis added).

30.     As defined, a "Security procedure" means a procedure employed for the purpose of verifying that an electronic signature, record, or performance is that of a specific person or for detecting changes or errors in the information in an electronic record. The term includes a procedure that requires the use of algorithms or other codes, identifying words or numbers, encryption, or callback or other acknowledgment procedures. UETA § 2(14); G.L. c. 110G § 2

31.     There are many methods lead providers can use to verify that the party signing a web-based consent form is in fact who they say they are, assuming there is a desire to, as opposed to a desire not to be complaint in order to create fraudulent consents as a proactive (and fraudulent) defense.

## THE PARTIES

32.     The allegations of paragraphs 1 through 31 of this Complaint are realleged and incorporated by reference.

33.     Plaintiff, Robert A. Doane ("Plaintiff"), is an individual residing at 21 New Lane, West Tisbury, Massachusetts, 02575, with an all season mailing at 103 Prospect Street, Wakefield, Massachusetts, 01880, where he may at all times be served.

34.     Defendant Toco Warranty Corp. ("Toco Warranty"), was at all time relevant a business organized under the laws of Delaware, with a principle office located at 8501 Fallbrook Avenue, Suite 225, West Hills, CA 91304, also registered as a foreign in Massachusetts. Toco's registered agent designated to accept service in Massachusetts is Corporation Service Company, 84 State Street, Boston, MA 02109.

35.     Defendant Warrantech Automotive, Inc. ("Warrantech") was at all times relevant a business organized under the laws of Connecticut, with a principle office located at 909 Third Ave,

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

33th Floor, New York, NY 10022, also registered as a foreign in Massachusetts. Warrantech's registered agent to accept service in Massachusetts is Corporation Service Company, 84 State Street, Boston, MA 02109.

36.     Defendant Wesco Insurance Company ("Wesco"), was at all times relevant a business organized under the laws of Delaware with a principle office located at 59 Maiden Lane, 43rd Floor, New York, NY. Wesco's registered agent to accept service is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

37.     Plaintiff does not yet know the identity of those employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the MTSA and other statutes herein and were not merely tangentially involved. Upon discovering these identities, this Complaint will be amended accordingly, as numerous District Courts have found, with respect to similar claims that individual officers/principals of corporate entities may be personally liable (jointly and severally) if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("American Blastfax"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("Universal Elections"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("Versteeg"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants.

38.     Whenever in this complaint it is alleged that the Defendants committed any act or omission, it is meant that this Defendants' officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

39.     Defendant(s), John Doe(s) and Jane Doe(s) ("Jane Doe(s) and/or John Doe(s)") 1-10 are unknown individuals residing at an unknown address. Upon discovering their true identities this complaint will be amended to reflect same.

40.     Defendant(s), XYZ Company(ies), is one or more unknown companies. Upon discovering their identity(ies) this complaint will be amended to reflect same.

## JURISDICTION AND VENUE

41.     The allegations of paragraphs 1 through 40 of this Complaint are realleged and incorporated by reference.

42.     This Court has subject matter jurisdiction because the claims in this Complaint arise under Massachusetts law. As to the TCPA, this federal statute provides that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a [s]tate, bring in an appropriate court of that [s]tate" an action to enforce the statute. See also Mulhern v. MacLeod, 441 Mass. 754. This court therefore has subject matter jurisdiction of the claims arising under the TCPA.

43.     This Court also has separate personal jurisdiction over any out-of-state defendants for those claims arising under the Massachusetts Telemarketing Solicitation Act, G.L. c. 159C et seq., because "[a] court of the Commonwealth may exercise personal jurisdiction over a nonresident or his executor or administrator as to an action or proceeding authorized by [G.L. c. 159C § 12]."

44.     This Court has underline(general) personal jurisdiction, because at all times relevant the defendants had continuous and systematic general business contacts with Massachusetts directly and through their agents, and this Court has underline(specific) personal jurisdiction under the Massachusetts Long Arm Statute, G.L c. 223A, because the defendants directly and through their agents: (a) transacted business in Massachusetts; and/or (b) contracted to supply services and things in Massachusetts; and/or (c) caused tortuous injury by acts and omissions in Massachusetts; and/or (d) caused tortuous injury in Massachusetts by acts and omissions outside Massachusetts in the course of regularly doing and soliciting business, and engaging in other persistent course of conduct while deriving substantial revenue from those goods used and consumed and services rendered in Massachusetts.

45.     Plaintiff has a residence in Wakefield, and a residence in West Tisbury, and lives and spends about an equal time in both places. For venue purposes, Plaintiff may file based on either

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

of his residences. *Bolton v. Krantz*, 54 Mass. App. Ct. 193, 764 N.E.2d 878 (2002). Venue is proper because Plaintiff lives in this Court's judicial district, or this Court's judicial district is adjacent to the judicial district in which Plaintiff lives.

## FACTUAL ALLEGATIONS

46.     The allegations of paragraphs 1 through 45 of this Complaint are realleged and incorporated by reference.

47.     Plaintiff is an individual who suffers from chronic pain and a sleep disorder, and often sleeps during the day. Plaintiff is the trustee of several trusts, is the primary caretaker and power of attorney for his two elderly parents and stepmother suffering from dementia.

48.     At all times relevant, the number 508-560-8115 has been assigned to Plaintiff's cellphone ("Wireless Phone"), which has been used for residential purposes, and has been listed on the National and Massachusetts do-not-call registries. A true copy of the printout indicating registration on the do-not-call list maintained by the FTC, which is automatically included in the Massachusetts do-not-call registry pursuant to §7 of the MTSA, is attached herewith as **"Exhibit 1"** and incorporated herein by reference.

49.     At all times relevant, defendant Toco Warranty was involved in the business of promoting, marketing, and selling vehicle service contracts ("VSC") on behalf of defendants Warrantech and Wesco.

50.     At all times relevant, defendant Toco Warranty caused others to make, and directly made, unsolicited telephonic sales calls to Massachusetts consumers on behalf of and to the benefit of itself, defendant Warratech, and defendant Wesco, and Toco Warranty acted as Warrantech's and Wesco's agent in selling Warrantech's and Westco's products and services.

51.     Leading up to May 28, 2020, Plaintiff received calls from telephone solicitors with foreign accents, spoofed numbers, using ATDS, attempting to solicit interest in a "vehicle warranty."

52.     Specifically, when Plaintiff answered these calls, there would be a pause and audible click, then an agent with a foreign accent would come on the line attempting to sell what the agent described as an "extended warranty." Despite Plaintiff making it clear there was no interest by way of registration

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

on the do-not-call registry, and through immediately terminating these harassing calls, the calls continued using other various deceptive spoofed numbers.

53.    Since the offending calls continued for several weeks unabated, Plaintiff, <u>without providing actual consent</u>, feigned interest for the sole purpose of identifying those responsible, after which defendant ToCo Warranty, without consent, called Plaintiff's Wireless Phone directly attempting to sell on behalf of defendants Warratech and Wesco an alleged "vehicle warranty."

54.    Upon information and belief, the calls preceding defendant ToCo Warranty's calls were the source of Toco's lead, and the reason Toco began calling Plaintiff directly. Specifically, initial calls by ToCo Warranty's call center were blasted out in the thousands while concealing evidence of the callers identity, and when interested persons were found, that persons information was entered onto ToCo Warranty's website, or passed on to Toco Warranty who entered the lead on its website, for the purpose of creating a proactive defense of a claimed opt in if someone complained.

55.    Defendant ToCo Warranty directly called, without Plaintiff's consent, on the following dates:

1. December 6, 2019, at 10:12 AM EST, from 855-298-8626 – left a voicemail;
2. December 6, 2019, at 4:22 PM EST, from 855-298-8626 – missed;
3. December 9, 2019, at 1:40 PM, from 855-298-8626 – picked up;
4. December 13, 2019, at 11:51 AM EST, from 855-298-8626 – left a voicemail;
5. December 17, 2019, at 5:23 PM EST, from 855-298-8626 – no one there when answered;
6. December 18, 2019, at 5:25 PM EST, from 855-298-8626 – left a voicemail;
7. December 23, 2019, at 5:17 PM EST, from 855-298-8626 – no one there when answered;
8. December 23, 2019, at 5:19 PM EST, from 855-298-8626 – left a voicemail;
9. December 27, 2019, at 5:33 PM EST, from 855-298-8626 – no one there when answered;
10. December 31, 2019, at 3:25 PM EST, from 855-298-8626 – missed;
11. January 6, 2020, at 11:47 PM EST, from 855-298-8626 – leaving a voicemail;
12. January 14, 2020, at 5:15 PM EST, from 855-298-8626 – missed;
13. February 5, 2020, at 2:52 PM EST, from 855-298-8626 – left a voicemail;
14. February 12, 2020, at 2:40 PM EST, from 855-298-8626 – missed;
15. February 20, 2020, at 10:31, from 855-298-8626 – leaving a voicemail;
16. February 26, 2020, at 1:45 PM EST, from 855-298-8626 – left a voicemail; and
17. March 5, 2020, at 5:49 PM EST, from 855-298-8626 – left a voicemail.[6]

---

[6] Since calls were received with a delay, and disconnection, there is a basis to believe, and allege, that ToCo Warranty's direct calls used a predictive dialer, a form of ATDS.

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

56.     On the call on December 6, 2019, at 10:12 AM EST, ToCo left a voicemail which stated in relevant part that the message was for "Robert" and that the caller's name was "Stephen" and that he was "calling in regard to the extended warranty quote … for a Ford F150" that was "requested online."

57.     In fact, Plaintiff did not make any such request online, or otherwise, and Plaintiff does not own a Ford F150.

58.     Plaintiff, upon picking up the third call, asked defendant Toco Warranty to send Plaintiff an email, and his email address was provided to the caller.

59.     Shortly thereafter, Plaintiff received an email from michael.brand@tocowarranty.com, providing an "estimate" for a so-called "Yellow Plan." In fact, no estimate was requested.

60.     Defendant Toco's estimate identified defendant Warrantech as the service contract which ToCo Warranty sells, and defendant Wesco as the insurer.

61.     The alleged "warranty" that defendant ToCo Warranty was attempting to sell Plaintiff is not a warranty at all, rather, it is a "Vehicle Service Contract," which is considered insurance in Massachusetts.

62.     A license is required to sell insurance in Massachusetts. Specifically, G.L. c. 175 § 162I specifically states, "A person shall not sell, solicit or negotiate insurance in the commonwealth for any class or classes of insurance unless the person is licensed for that line of authority in accordance with sections 162H to 162X, inclusive."

63.     Defendant ToCo Warranty is not licensed to sell insurance in Massachusetts.

64.     Selling insurance in Massachusetts without a license is a violation of G.L. c. 176D, and G.L. c. 93A, the Massachusetts Consumer Protection Act, as it is an unfair and deceptive to sell insurance in Massachusetts without a license.

65.     A filing on May 9, 2018 states defendant ToCo Warranty's "type of business" is "Insurance, and a filing on May 14, 2020 states that ToCo Warranty's "type of business" is "**Tele/Direct marketing for Warrantech**." True copies of these filings are attached herewith as **"Exhibit 2"** and incorporated herein by reference.

66.     Likewise, a document filed by Defendant ToCo Warranty with the Massachusetts Secretary of State, dated December 31, 2019, also represents the type of business as "**Tele/Direct marketing for Warrantech**." A true copy of the filing is attached herewith as **"Exhibit 3"** and incorporated herein by reference.

67.     Defendant ToCo Warranty is not licensed as a seller of insurance nor is Toco Warranty registered as a telephone solicitor with the Office of Consumer Affairs and Business regulation.

68.     At no time was defendant ToCo Warranty or anyone acting on their behalf provided with Plaintiff's prior express written consent to call his Wireless Phone (registered on the federal and Massachusetts do-not-call registries), with telephonic sales calls. using ATDS, and spoofing.

69.     Defendant Toco's Warranty's agent caused, without Plaintiff's consent, not less than seven (7) unsolicited calls to Plaintiff's Wireless Phone, using spoofing and ATDS, while Plaintiff's number was at all times listed on federal and state do-not-call registries.

70.     Defendant Toco Warranty directly initiated, without Plaintiff's consent, not less than seventeen (17) unsolicited calls to Plaintiff's Wireless Phone, while Plaintiff's number was at all times listed on federal and state do-not-call registries.

71.     On May 28, 2020, Plaintiff sent defendant Toco Warranty a demand letter containing immediate demands, five-day demands, and a 30-day demand under the provisions of G.L. c. 93A. The Demand Letter demanded Toco Warranty's do-not-call policy, and that the calls immediately stop. The demand letter also demanded actual and statutory damages. A true copy of the demand letter is attached herewith as **"Exhibit 4"** and incorporated herein by reference.

72.     On June 12, 2020, defendant Toco Warranty replied to Plaintiff's demand letter, without ever having provided their do-not-call policy, stating in relevant part;

> Toco calls only prospective customers who have first contacted the company, expressed an interest in the product that it markets, and provided consent to be contacted. All calls originate in the US and are made under the company's phone number.

> On December 6, 2019, a request was logged via Toco's online portal providing the name "Robert Doane" and using the email address robertdoane@pokemail.net. As part of the online quote request process, the user clicked the below consent language. This same user provided the contact phone number 508-560-8115

73.     A true copy of defendant Toco Warranty's response is attached herewith as **"Exhibit 5"** and incorporated herein by reference.

74.     In fact, Plaintiff did not submit his web-based consent as Toco Warranty alleged.

75.     Plaintiff requested from defendant Toco Warranty the specifics regarding the alleged consent, including IP address.

76.     Defendant Toco replied with an IP address which is not that of Plaintiff's, but originated from an anonymizer, i.e., a system that conceals the identity of the opting in party, and the alleged consent also contained an email that not a valid email address. A true copy of defendant Toco Warranty's letter is attached herewith as **"Exhibit 6"** and incorporated herein by reference.

77.     Upon information and belief, Defendant Toco Warranty's telemarketer, or Toco Warranty itself, impersonated Plaintiff and others and fabricated consents to proactively create plausible deniability on behalf of the Defendants in the event someone complained, which Plaintiff did.

78.     On July 2, 2020, Plaintiff sent defendant Warrantech a demand letter containing immediate demands, five-day demands, and a 30-day demand under the provisions of G.L. c. 93A. The demand letter also demanded actual and statutory damages. A true copy of the demand letter is attached herewith as **"Exhibit 7"** and incorporated herein by reference.

79.     Defendant Warrantech did not respond to Plaintiff's demand letter.

80.     The Defendants' phone harassment campaign and illegal solicitation activities have caused Plaintiff actual harm, including but not limited to invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, waste of time, diminished value and utility of his cell phone and subscription services, the wear and tear caused to his cell phone, the loss of battery charge and battery life, and per-kilowatt electricity cost required to recharge his cellular telephone as a result of increased usage of his cell phone services. In addition, each time the Defendant conspirators caused a telephone call to Plaintiff's cell phone, they occupied his phone such that Plaintiff was unable to receive other phone calls. Plaintiff was forced, at his time and expense, to try and identify those responsible to try and get the illegal activities to cease, and incurred expense in time, materials, and use of equipment.

81.     Defendant Toco Warranty conspired with their yet-to-be identified telemarketers, and with defendant Warrantech, and defendant Toco Warranty was acting exclusively as agent of and at the direction and control of Warrantech, and Warrantech was acting as agent of Wesco.

## COUNT I
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A))
### (As to All Defendants)

82.     The allegations of Paragraphs 1 through 81 of this Complaint are realleged and incorporated by reference.

83.     Plaintiff was a "person" as defined by TCPA, 47 U.S.C. §§ 227 et seq.;

84.     Defendants called Plaintiff's Wireless Phone in an attempt to encouraging the purchase of goods and services. The FCC has said, "We … decline to establish an exemption for calls made to set "face-to face" appointments.... We conclude that such calls are made for the purpose of encouraging the purchase of goods and services and therefore fall within the statutory definition of telephone solicitation." *See* In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, the CG Docket No. 02-278, FCC 03-153, July 3, 2003.

85.     Defendants attempted to have Plaintiff purchase products and services, and each was a "telephone solicitation" as defined by TCPA. The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

86.     "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

87.     The FCC has determined that predictive dialing systems are a form of automatic telephone dialing system. Based on the delay, click, and lack of prompt human response during the calls Plaintiff answered, and the frequency of the calls, the Defendants' agents used a predictive dialing system to place calls to Plaintiff's cell phone.

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

88.      In any event, "[w]hen evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually, store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 951 (9th Cir. 2009).

89.      Defendants, through their agent telemarketer and in conspiracy therewith, violated 47 U.S.C. §227(b)(1)(A)(iii) by causing Plaintiff's Wireless Phone to be called using an ATDS, without Plaintiff's prior express written consent.

90.      Defendants, through their agent telemarketer and in conspiracy therewith, repeatedly violated 47 U.S.C. §227(b)(1)(A)(iii), by placing **not less than seven (7)** telemarketing calls to Plaintiff's Wireless Phone using ATDS, without Plaintiff's prior express written consent.

91.      Pursuant to 47 U.S.C. § 227(b)(3)(B), Defendants are liable to Plaintiff for a minimum of $500 in statutory damages per violation under this count, or not less than $3,500 for the not less than seven (7) violations thereof.

92.      Pursuant to 47 U.S.C. § 227(b)(3)(C), willful or knowing violations of the TCPA trigger treble damages. Defendants conduct is in violation of 47 U.S.C. §227(b)(1)(A)(iii), were willful and knowing, and thus Plaintiff's single damages of $3,500 are subject to trebling to $10,500.

### COUNT II
**(Violations of TCPA Privacy Provisions as Promulgated under 47 U.S.C. §227(c)(1) to (4))**
**(As to All Defendants)**

93.      The allegations of Paragraphs 1 through 92 of this Complaint are realleged and incorporated by reference.

94.      A private right of action exists pursuant to 47 U.S.C.A. § 227(c)(5) of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 for violation of the FCC's national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4).

95.     47 C.F.R. § 64.1200(c) and (d) sets forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call. Prior to initiating telemarketing calls, the person or entity placing the call must adopt specific standards. *Id.* For example, the telemarketer "must have a written policy, available upon demand, for maintaining a do-not-call list." A violation of subsection (d) gives rise to liability under 47 U.S.C. § 227(c)(5).

96.     Defendants, through their agent telemarketer and in conspiracy therewith, and directly, violated 47 C.F.R. § 64.1200(d) by causing telephone solicitation calls to be made to Plaintiff's Wireless Phone without first instituting procedures for maintaining a list of persons who do not wish to receive telephone solicitations made by or on behalf of Defendants, and this gives rise to liability under 47 U.S.C. § 227(c)(5).

97.     Defendants, through their agent telemarketer and in conspiracy therewith, and directly, violated 47 C.F.R. § 64.1200(d)(1) by failing to provide Plaintiff, upon his demand, a do-not-call policy, and this gives rise to liability under 47 U.S.C. § 227(c)(5).

98.     Defendants, through their agent telemarketer and in conspiracy therewith, and directly, violated 47 C.F.R. § 64.1200(d)(3) by and through the course of initiating calls to Plaintiff for the purposes of a telemarketing solicitation by repeatedly failing to honor Plaintiff's do-not-call requests and continuing to call Plaintiff after such requests, and this gives rise to liability under 47 U.S.C. § 227(c)(5), per call.

99.     Defendants, through their agent telemarketer and in conspiracy therewith, and directly, violated 47 C.F.R. § 64.1200(c)(2), by engaging in a pattern or practice of initiating telephone solicitations to Plaintiff's Wireless Phone while said telephone number, at all times relevant, was listed on the FTC's do not call registry, and this gives rise to damages under 47 U.S.C. § 227(c)(5).

100.    Defendants, through their agent telemarketer and in conspiracy therewith, and directly, violated 47 C.F.R. § 64.1200(d)(4) by failing to immediately provide Plaintiff with a telephone number or address, and this gives rise to liability under 47 U.S.C. § 227(c)(5).

101.    Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, Defendant are liable to Plaintiff for its agent telemarketer's not less than seven (7) calls, and defendant Toco Warranty's not less than seventeen (17) direct calls, entitling Plaintiff to minimum damages of

$500 per violation under this Count, or not less than $12,000 for the not less than twenty four (24) violations thereof.

102.    Defendants conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulation promulgated thereunder were willful and knowing, and thus Plaintiff's single damages of $12,000 are subject to trebling to $36,000.

## COUNT III
### Violations of the Massachusetts Telemarketing Solicitation Act, G.L. c. 159C
### (As to All Defendants)

103.    The allegations of Paragraphs 1 through 102 of this Complaint are realleged and incorporated by reference.

104.    The Massachusetts Telephone Solicitations Act, G.L. c. 159C et seq., or the "MTSA," and the regulations promulgated thereunder, 201 CMR 12 (the "Regulations"), provide more stringent penalties than the TCPA, and its remedies are not exclusive. *See* § 13.

105.    The MTSA provides a private right of action for "[a] person that receives more than 1 unsolicited telephonic sales call within a 12-month period by or on behalf of the same person or entity in violation of [c. 159C] may … bring an action to recover for actual monetary loss from such knowing violation or to receive not more than $5,000 in damages for such knowing violation, whichever is greater …" *See* § 8(b).

106.    The Regulations require "the telephone solicitor engaging in unsolicited telephonic sales calls to Massachusetts consumers to properly register on an annual basis with the [Office of Consumer Affairs and Business Regulation ("OCABR")] … along with a statement from an officer of the company affirming that the company will fully comply with the provisions of the [MTSA] and 201 CMR 12.00, et seq." *See* 201 CMR 12.04 (1).

107.     Defendants, through their agent telemarketer and in conspiracy therewith, and directly, called Plaintiff in Massachusetts for the purposes of making telephone solicitations.

108.    The Defendants at no time were registered with the OCABR, and thus the Defendants violated the MTSA.

109.    The MTSA and its Regulations also prohibit making unsolicited telephonic sales calls to Massachusetts consumers who are registered on the Massachusetts do-not-call registry. *See* § 3.

110.    Defendants, through their agent telemarketer and in conspiracy therewith, made not less than seven (7) unsolicited telephonic sales calls to Plaintiff, and Defendants directly made not less that seventeen (17) unsolicited telephonic sales calls to Plaintiff, all while Plaintiff's number was registered on the Massachusetts do-not-call registry, and without Plaintiff's prior consent, and thus Defendants violated the MTSA.

111.    The MTSA and its Regulations also prohibit use of a "blocking device or service to circumvent a consumer's use of a call identification service or device." *See* § 4.

112.    Defendants, through their agent telemarketer and in conspiracy therewith, and directly, made not less than seven (7) calls to Plaintiff using spoofing, which circumvents a consumer's use of a call identification service or device, and thus Defendants violated the MTSA.

113.    The MTSA requires that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers shall, at the beginning of such call, disclose [(b) the correct name of the telemarketing company that employs the individual telemarketer who is making the call; [and] (c) the correct name of the ultimate seller whose goods or services are being offered by means of the telemarketing call] … within the first minute of a telephonic sales call …" *See* § 5A.

114.    Defendants, through their agent telemarketer and in conspiracy therewith, and directly, did not disclose their own identity or the correct name of the ultimate seller, and thus failed to comply with § 5A, and violated the MTSA.

115.    Defendants, through their agent telemarketer and in conspiracy therewith, and directly, failed to establish or implement, with due care, reasonable practices and procedures to effectively prevent unsolicited telephonic sales calls, in violation of the MTSA.

116.    The reason Defendant failed to establish or implement, with due care, reasonable practices and procedures to effectively prevent unsolicited telephonic sales calls is because Defendants knowingly intended to engage in telemarketing that violated the law.

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

117.    Plaintiff is entitled to mandatory statutory damages of $5,000 per each of the not less than twenty (24) violations of the MTSA, or not less than $120,000. *See* G.L. c. 159C § 8(b).

118.    Plaintiff is entitled to statutory damages separate and apart from those under any other cause of action as "[t]he remedies, duties, prohibitions and penalties provided in [G.L. c. 159C] shall not be exclusive and shall be in addition to all other causes of action, remedies and penalties provided by law, including any applicable remedies pursuant to chapter 93A."  *See* § 13

### COUNT IV
**Invasion of Privacy by Intrusion Upon Seclusion**
**(As to All Defendants)**

119.    The allegations of Paragraphs 1 through 118 of this Complaint are realleged and incorporated by reference.

120.    G.L. c. 214, § 1B, inserted by St. 1974, c. 193, § 1, provides in relevant part: "A person shall have a right against unreasonable, substantial or serious interference with his privacy."

121.    The *Restatement of Torts, Second*, § 652(b) defines intrusion upon seclusion as "One who intentionally intrudes … upon the solitude or seclusion, or his private affairs or concerns, is subject to liability to the other for invasion of privacy. If the intrusion would be highly offensive to a reasonable person.

122.    Massachusetts further recognizes the Plaintiff's right to be free from invasions of privacy, thus Defendants, through and in conspiracy with their agents, violated Massachusetts law

123.    Defendants, through their agent telemarketer and in conspiracy therewith, and directly, intentionally intruded upon Plaintiff's right to privacy by causing Plaintiff's Wireless Phone to be called numerous times while Plaintiff's number was on the Massachusetts do-not-call registry

124.    Defendants' calls to Plaintiff were so intrusive as to be "hounding the plaintiff" and "a substantial burden to his existence," thus satisfying the *Restatement of Torts, Second*, § 652(b) requirement for an invasion of privacy

125.    Defendants' conduct resulted in multiple invasions of privacy in such a way as would be considered highly offensive to a reasonable person.

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

126.    As a result of Defendants' conduct, and in light of the substantial harms Plaintiff suffered, Plaintiff is entitled to his actual damages, and his punitive damages.

## COUNT V
### Violations of the Massachusetts Consumer Protection Act, G.L. c. 93A
### (As to All Defendants)

127.    The allegations of Paragraphs 1 through 126 of this Complaint are realleged and incorporated by reference.

128.    At all times relevant the Defendants were engaged in trade or commerce within the meaning of G.L. c. 93A §2.

129.    The Defendants have engaged in unfair and deceptive practices declared unlawful by G.L. c. 93A. Such acts of unfair competition include, but are not limited to, violations of the TCPA, the MTSA, and the invasion of Plaintiff's privacy and intrusion upon his seclusion.

130.    The aforementioned statutory violations constitute *per se* violations of G.L. c. 93A. The regulations promulgated by the Massachusetts Attorney General, 940 C.M.R. 3.16, state that "[w]ithout limiting the scope of any other rule, regulation or statute, an act or practice is a violation of G.L. c. 93A, § 2 if "… (4) [i]t violates the Federal Trade Commission Act … or other Federal Consumer Protection statutes within the purview of M.G.L. c. 93A, § 2.".

131.    The Defendants, systematically and on a large scale, placed unsolicited and harassing telemarketing calls to consumers in Massachusetts in order to aggressively market their products and services, while damaging the name of their competitors, and others who conduct business lawfully, giving the Defendants a competitive advantage, and causing substantial injury to Massachusetts consumers and businesses.

132.    The Defendants impersonation of Plaintiff, and forgery of his signature, to claim Plaintiff consented to receive calls when he did not, and to use such fraudulent consent, is outrageous.

133.    The Defendants conspiracy to sell insurance in Massachusetts without a license is per se unfair and deceptive and in violation of G.L. c. 93A.

134.    The Defendants' conduct is criminal, against public policy, immoral, unethical, oppressive, and cause Plaintiff, and Massachusetts residents generally, substantial harm, and if left unabated, the Defendants conduct poses a clear and present risk of future harm to those throughout Massachusetts.

135.    Plaintiff sent Defendants (Toco Warranty and Warrantech) a 30-day Massachusetts Consumer Protection Act, G.L. c. 93A, Demand Letters, and Defendants failed to respond to them with a reasonable offer.

136.    Defendants' violations of G.L. c. 93A were willful and knowing, and as a direct and proximate cause of same, Plaintiff suffered the harms alleged herein.

137.    Plaintiff is entitled to an award of his actual damages, and the multiplication of his actual damages under the provisions of G.L. c. 93A as punitive damages.

138.    An award of punitive damages is appropriate because the Defendants' conduct was outrageous, willful and wanton, and showed reckless disregard for the rights of Plaintiff and Massachusetts consumers, generally.

## COUNT VI
### Conspiracy
### (As to All Defendants)

139.    The allegations of Paragraphs 1 through 138 of this Complaint are realleged and incorporated by reference.

140.    The Defendants, pursuant to an agreement, including telemarketers and website operators, acted in concert to commit unlawful acts, from which the Defendants sought to profit and seek a competitive advantage, at the expense of Plaintiff's privacy rights and to his harm, a goal the Defendants would not have been able to accomplish had they acted independently.

## COUNT VII
### Negligence in Hiring and Retention
### (As to the Defendants)

141.    The allegations of Paragraphs 1 through 140 of this Complaint are realleged and incorporated by reference.

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

142.   Upon information and belief, Defendants Toco Warranty's telemarketer is a foreign entity, and believed more likely than not to be from either India or Pakistan.

143.   There is not one foreign telemarketer registered with the OCABR.

144.   Defendants Toco Warranty's telemarketer is not registered with the OCABR, as required by G.L. c. 159C et seq., pursuant to the Regulations thereunder, while such registration is the only way to obtain the Massachusetts do-not-call registry.

145.   Defendant Toco Warranty, prior to the Defendants' telemarketer's calls to Plaintiff, had information available to them indicating that their telemarketer was not registered with the OCABR, did not have the Massachusetts do-not-call registry, were making calls in violation of the law, and were unqualified to make calls on the Defendants' behalf, yet the Defendants did nothing other than continue to use their telemarketer to make unsolicited telephonic sales calls to Plaintiff and others in Massachusetts.

146.   Defendant Toco Warranty knew or should have known of their telemarketer's propensity for violating the law, the Defendants were negligent in hiring and in retaining their telemarketer, and as a result, the Plaintiff suffered the harms alleged herein.

147.   Defendants Toco Warranty is not registered with the OCABR, as required by G.L. c. 159C et seq., pursuant to the Regulations thereunder, while such registration is the only way to obtain the Massachusetts do-not-call registry.

148.   Defendant Warrantech, prior to defendants Toco Warranty's calls to Plaintiff, had information available to them indicating that defendant Toco Warranty was not registered with the OCABR, did not have the Massachusetts do-not-call registry, were making calls in violation of the law, and were unqualified to make calls on the defendant Warrantech's behalf, yet defendant Warrantech did nothing other than continue to use defendant Toco Warranty to make unsolicited telephonic sales calls to Plaintiff and others in Massachusetts.

149.   Defendant Warrantech knew or should have known of defendant Toco Warranty's propensity for violating the law, Warrantech was negligent in hiring and in retaining Toco Warranty, and as a result, the Plaintiff suffered the harms alleged herein.

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

150.    Defendant Toco Warranty is not licensed as an insurance seller in Massachusetts, as required G.L. c. 175 § 162I, which states, "A person shall not sell, solicit or negotiate insurance in the commonwealth for any class or classes of insurance unless the person is licensed for that line of authority in accordance with sections 162H to 162X, inclusive."

151.    Defendant Warrantech, prior to defendants Toco Warranty's calls to Plaintiff, had information available to them indicating that Toco Warranty was not registered as an insurance seller in Massachusetts, and were selling insurance in Massachusetts in violation of the law, and were unqualified to sell insurance on defendant Westco's behalf, yet Westco did nothing other than continue to use Toco Warranty to sell insurance to Plaintiff and others in Massachusetts.

152.    Defendant Wesco knew or should have known of defendant Toco Warranty's propensity for violating the law, Wesco was negligent in hiring and in retaining Toco Warranty, and as a result, the Plaintiff suffered the harms alleged herein.

## <u>COUNT VIII</u>
### (As to the Telemarketer and the John and/or Jane Doe(s) and/or XYZ Company(ies))

153.    The allegations of Paragraphs 1 through 152 of this Complaint are realleged and incorporated by reference.

154.    To the extent any claim made in this complaint against the Defendants are attributable solely against the telemarketer or any other party, or in the event that the telemarketer or any unknown defendant(s) may be jointly and/or severally liable, such claims are incorporated in this Count by reference against each of them, and upon discovery of all the true identities of them, this complaint shall be amended.

**WHEREFORE**, as to all Counts, the Plaintiff, subjecting himself to this Court's procedural limits on the amount in controversy, respectfully requests that this Court enter judgment for Plaintiff as follows:

1.  As to Counts I and II, pursuant to the provisions of the TCPA, award Plaintiff statutory damages of not less than $500 for each of the not less than thirty-one (31) violations thereof, or $15,500, subject to trebling to $46,500 for knowing and intentional violations thereof, as provided thereunder;

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

2. As to Count III, claims arising under the MTSA, G.L. c. 159C, et seq., find that Defendants violated G.L. c. 159C, and award Plaintiff statutory damages of not less than $5,000 for each of the not less than twenty four (24) violations thereof, or $120,000 as so determined, and find such violation thereof as per se unfair and deceptive in violation of G.L. c. 93A;

3. As to Count IV, claims arising under G.L. c. 214, § B, et seq., invasion of privacy and intrusion upon seclusion, find the Defendants violated G.L. c. 214, § B, and award Plaintiff his actual damages, as so determined, and apply such damages to the provisions of G.L. c. 93A;

4. As to Count V, claims arising under G.L. c. 93A et seq., the Massachusetts Consumer Protection Act, find the Defendants violated G.L. c. 93A, and award Plaintiff his actual damages as so determined, and other damages from the previous counts, or at least nominal damages of $25.00 for each of the not less than twenty-four (24) calls ($600.00), and for Defendants willful and knowing violations thereof, treble Plaintiff's actual damages exceeding nominal, as to each of the Defendants, as provided thereunder, without the right of contribution;

5. As to Count VI, Conspiracy, find the Defendants conspired to engage in the conduct alleged giving rise to Plaintiff's claims, and find each of the Defendants jointly and severally liable for the damages sought under each count herein;

6. As to Count VII, in the alternative, find that the Defendants were negligent in hiring and retention as so alleged, find them so liable, and award Plaintiff his statutory and actual damages as appropriate and just;

7. As to Count VIII, to the extent any claim made is found solely attributable to the any other party, find them so liable, and award damages as appropriate and just;

8. Award interest, costs, and attorney's fees (if any); and such other relief as this Court deems just and proper.

Plaintiff,

/s/ Robert A. Doane

_____

Robert A. Doane, *Pro Se*
Mail:   103 Prospect Street
Wakefield, MA 01880
Tel: 508-560-8115

Date:   October 20, 2020        E-Mail: robertdoane@rcn.com

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

# Exhibit 1

# Exhibit 1

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:



**From:** **Verify@donotcall.gov**  Verify@DonotCall.gov
**Subject:** National Do Not Call Registry - Your Registration Is Confirmed
**Date:** April 16, 2016 at 4:37 PM
**To:** robertdoane@rcn.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 8115 on April 17, 2016. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov  to register another number or file a complaint against someone violating the Registry.

**************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

Exhibit 2

# Exhibit 2

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:



## State of California
### Secretary of State

| F |
|---|

**Statement of Information**
(Foreign Corporation)
**FEES (Filing and Disclosure): $25.00.**
**If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FW62523**

# FILED

**In the office of the Secretary of State
of the State of California**

**MAY-09 2018**

1. **CORPORATE NAME**

TOCO WARRANTY CORP.

2. **CALIFORNIA CORPORATE NUMBER**        C3567772

*This Space for Filing Use Only*

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3. **If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.**

☐ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 13.**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 4. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | |
| 8501 FALLBROOK AVENUE STE 225, WEST HILLS, CA 91304 | | | |
| 5. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | | |
| 6. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 4 | | | |
| KAYLIN MCCOY   800 SUPERIOR AVENUE, 21ST FL, CLEVELAND, OH 44114 | | | |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 7. CHIEF EXECUTIVE OFFICER/          ADDRESS | | | |
| NORMAN ROSENBERG   59 MAIDEN LANE , 42ND FL, NEW YORK, NY 10038 | | | |
| 8. SECRETARY          ADDRESS | | | |
| STEPHEN UNGAR   59 MAIDEN LANE,42ND FL, NEW YORK, NY 10038 | | | |
| 9. CHIEF FINANCIAL OFFICER/          ADDRESS | | | |
| HARRY SCHLACHTER   59 MAIDEN LANE, 42ND FL, NEW YORK, NY 10038 | | | |

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 11 must be left blank.

10. NAME OF AGENT FOR SERVICE OF PROCESS [Note: The person designated as the corporation's agent MUST have agreed to act in that capacity prior to the designation.]

CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE

11. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** CITY       STATE    ZIP CODE

**Type of Business**

12. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

INSURANCE

13. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| 05/09/2018 | STEPHEN UNGAR | SECRETARY | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

SI-350 (REV 01/2013)                                                    APPROVED BY SECRETARY OF STATE



**California Secretary of State**
Electronic Filing

## Corporation - Statement of Information

| | |
|---|---|
| Entity Name: | TOCO WARRANTY CORP. |

| | |
|---|---|
| Entity (File) Number: | C3567772 |
| File Date: | 05/14/2020 |
| Entity Type: | Corporation |
| Jurisdiction: | DELAWARE |
| Document ID: | GF61272 |

**Detailed Filing Information**

1. Entity Name:

TOCO WARRANTY CORP.

2. Business Addresses:

   a. Street Address of Principal Office in California:

8501 Fallbrook Ave, Ste 225
West Hills, California 91304
United States of America

   b. Mailing Address:

720 N Post Oak Ln, Suite 500
Houston, Texas 77024
United States of America

   c. Street Address of Principal Executive Office:

8501 Fallbrook Ave, Ste 225
West Hills, California 91304
United States of America

3. Officers:

   a. Chief Executive Officer:

Todd   Early
720 N Post Oak Ln, Suite 500
Houston, Texas 77024
United States of America

   b. Secretary:

John   Rentz
720 N Post Oak Ln, Suite 500
Houston, Texas 77024
United States of America

Document ID: GF61272

# California Secretary of State
## Electronic Filing

Officers (cont'd):

    c.  Chief Financial Officer:

Blake   Morris
720 N Post Oak Ln, Suite 500
Houston, Texas 77024
United States of America

4.  Director:

Not Applicable

Number of Vacancies on the Board of Directors:

Not Applicable

5.  Agent for Service of Process:

CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA     AS CSC - LAWYERS INCORPORATING SERVICE (C1592199)

6.  Type of Business:

Tele/Direct marketing for Warrantech.

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:  John Rentz

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GF61272

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

**Exhibit 3**

# Exhibit 3

MA SOC   Filing Number: 202066711270      Date: 2/26/2020 4:24:00 PM



## The Commonwealth of Massachusetts
## William Francis Galvin

**Minimum Fee: $100.00**

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

### Annual Report
(General Laws, Chapter 156D, Section 16.22; 950 CMR 113.57)

**Identification Number:** 001104891

**1. Exact name of the corporation:** TOCO WARRANTY CORP.

**2. Jurisdiction of Incorporation:** State: DE   Country: USA

**3,4. Street address of the corporation registered office in the commonwealth and the name of the registered agent at that office:**

Name: CORPORATION SERVICE COMPANY
No. and Street: 84 STATE ST.
City or Town: BOSTON   State: MA   Zip: 02109   Country: USA

**5. Street address of the corporation's principal office:**

No. and Street: 8501 FALLBROOK AVE STE 225
City or Town: WEST HILLS   State: CA   Zip: 91304   Country: USA

**6. Provide the name and business street address of the officers and of all the directors of the corporation:**
*(A president, treasurer, secretary and at least one director are required.)*

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| PRESIDENT | NOTA BERGER | 8501 FALLBROOK AVE, STE 225<br>WEST HILLS, CA 91304 USA |
| TREASURER | TIM NAIZER | 8501 FALLBROOK AVE, STE 225<br>WEST HILLS, CA 91304 USA |
| SECRETARY | JOHN RENTZ | 8501 FALLBROOK AVE, STE 225<br>WEST HILLS, CA 91304 USA |
| CFO | BLAKE MORRIS | 8501 FALLBROOK AVE, STE 225<br>WEST HILLS, CA 91304 USA |
| CHIEF OPERATING OFFICER | BRAD BASMAJIAN | 8501 FALLBROOK AVE, STE 225<br>WEST HILLS, CA 91304 USA |
| VICE PRESIDENT | JOHN RENTZ | 8501 FALLBROOK AVE, STE 225<br>WEST HILLS, CA 91304 USA |

**7. Briefly describe the business of the corporation:**

TELE/DIRECT MARKETING FOR WARRANTECH.

**8. Capital stock of each class and series:**

| | Par Value Per Share | Total Authorized by Articles | Total Issued |
|---|---|---|---|

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

| Class of Stock | Enter **0** if no Par | of Organization or Amendments | | and Outstanding |
| --- | --- | --- | --- | --- |
| | | *Num of Shares* | *Total Par Value* | *Num of Shares* |
| CNP | $0.00000 | 100 | $0.00 | 0 |

**9. Check here if the stock of the corporation is publicly traded:** ___

**10. Report is filed for fiscal year ending:** 12/31/ <u>2019</u>

**Signed by** <u>JOHN RENTZ</u> **, its** <u>OTHER OFFICER</u>
**on this 26 Day of February, 2020**

© 2001 - 2020 Commonwealth of Massachusetts
All Rights Reserved

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

**Exhibit 4**

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

## ROBERT A. DOANE

Martha's Vineyard Residence
Twenty-One New Lane and Seventy Blackthorn Road
West Tisbury, MA 02575

————

robertdoane@rcn.com

<u>Mailing Address</u>

103 Prospect Street
Wakefield, MA 01880                                         Facsimile 888.712.2724

28 May 2020

<u>**CONFIDENTIAL AND URGENT**</u>

<u>***Sent Via US Mail and E-Mail – info@tocowarranty.com***</u>
Nota Berger, CEO
ToCo Warranty Corp
8501 Fallbrook Avenue, Suite 225
West Hills, CA 91304

720 N Post Oak Lane, Suite 500
Houston, TX 77024

> RE:   Immediate Demand to Cease and Desist, Immediate Demand under the
> Federal Telephone Consumer Protection Act, and the Massachusetts
> Telephone Solicitation Act; 30-day demand under the Massachusetts
> Consumer Protection Act; Notice of Litigation Hold.

Mr. Berger:

    This letter is directed to ToCo Warranty Corp, and to each of its officers in their individual and personal capacities[1] (collectively "ToCo Warranty"), as well as other conspirators, including but not limited to Warrantech Automotive, Inc. ("Warrantech"), and Wesco Insurance Company ("Wesco") – who will be noticed in the event ToCo Warranty fails to timely respond to the immediate and five day demands herein.[2]

    I am listed on federal and state do-not-call registries. I am the trustee of several trusts with various legal obligations and responsibilities. I am the power of attorney and caretaker for my elderly parents, and stepmother who presently suffers from dementia. I am frequently in my car traveling. I have several other responsibilities requiring focus and attention. I have a sleep disorder often requiring me to sleep odd hours during the day. I do not want to be bothered, interrupted, or distracted by telephone solicitations when I have clearly expressed to the world I do not want to be bothered by them. Given my circumstances, and the requirement I answer my phone to address important and

---

[1] It appears from the Massachusetts Secretary of State Corporations Division that at the time of the events giving rise to the claims described herein that Nota Berger, Brad Basmajian, and Pauline Brooks were the officers of ToCo Warranty at the relevant time.

[2] As later explained in this demand letter, ToGo Warranty has thirty (30) days to respond to the demands made under G.L. c. 93A, before an action may commence thereunder.

sometimes emergency matters, such calls are particularly intrusive, distracting, and disruptive, and – after making it repeatedly clear to the offenders that keep calling that I do not want to be called – are outright harassing and a severe invasion of my privacy.

ToCo Warranty and its coconspirators have been determined responsible for, among other things, causing, through its agents, not less than seven (7) unsolicited sales calls to my cellphone in violation of the Telephone Consumer Protection Act 47 U.S.C. §227, et seq. ("TCPA"), and the Massachusetts Telephone Solicitation Act, G.L. c 159C, et seq. ("MTSA"), both *per se* violations of the Massachusetts Consumer Protection Act, G.L. c. 93A et seq., and not less than seventeen (17) calls directly. Indeed, ToCo Warranty is making telephone solicitations to residents of Massachusetts, selling "insurance," without being registered as either an insurer or telephone solicitor, as Massachusetts law requires.

Specifically, ToCo Warranty, over the last several weeks, in a conspiracy with others, in an attempt to solicit the sale of a so called "extended warranty," caused, without my prior express written consent, numerous telemarketing calls to my cellphone (508-560-8115) listed on federal and state do-not-call registries, using automatic telephone dialing systems ("ATDS"), and spoofing, i.e., displacing the caller identification with a bogus or illegitimate non-working number, also without disclosing the identity of the party calling, or on whose behalf the party was calling, all in violation of various civil and criminal provisions of the TCPA and the MTSA, and the regulations promulgated thereunder, and – since the conduct is facially and per se unfair and deceptive – in violation of G.L. c. 93A. When these calls were answered, there would be a pause and audible click, then an agent with a foreign accent attempting to sell an "extended warranty." Despite making it clear there was no interest by way of registration on the do-not-call registry, and through immediately terminating these harassing calls, the calls continued using other various deceptive spoofed numbers. Since the offending calls continued for several weeks unabated, interest was feigned, <u>without providing actual consent</u>, for the sole purpose of trying to identify those responsible. After that interest was feigned, ToCo Warranty began directly calling my cellphone attempting to solicit the sales of an alleged vehicle warranty, without my consent.

ToCo Warranty called on the following dates:

1. December 6, 2019, at 10:12 AM EST, from 855-298-8626 – left a voicemail;
2. December 6, 2019, at 4:22 PM EST, from 855-298-8626 – missed;
3. December 9, 2020, at 1:40 PM, from 855-298-8626 – picked up;
4. December 13, 2019, at 11:51 AM EST, from 855-298-8626 – left a voicemail;
5. December 17, 2019, at 5:23 PM EST, from 855-298-8626 – no one there when answered;
6. December 18, 2019, at 5:25 PM EST, from 855-298-8626 – leaving a voicemail;
7. December 23, 2019, at 5:17 PM EST, from 855-298-8626 – no one there when answered;
8. December 23, 2019, at 5:19 PM EST, from 855-298-8626 – leaving a voicemail;
9. December 27, 2019, at 5:33 PM EST, from 855-298-8626 – no one there when answered;
10. December 31, 2019, at 3:25 PM EST, from 855-298-8626 – missed;
11. January 6, 2020, at 11:47 PM EST, from 855-298-8626 – leaving a voicemail;
12. January 14, 2020, at 5:15 PM EST, from 855-298-8626 – missed;
13. February 5, 2020, at 2:52 PM EST, from 855-298-8626 – leaving a voicemail;
14. February 12, 2020, at 2:40 PM EST, from 855-298-8626 – missed;
15. February 20, 2020, at 10:31, from 855-298-8626 – leaving a voicemail;

16. February 26, 2020, at 1:45 PM EST, from 855-298-8626 – leaving a voicemail; and
17. March 5, 2020, at 5:49 PM EST, from 855-298-8626 – leaving a voicemail.[3]

On the December 6, 2019, at 10:12 AM EST voicemail, ToCo Warranty stated, in relevant part, that the message was for "Robert" and that the caller's name was "Stephen" and that he was "calling in regard to the extended warranty quote … for a Ford F150" and that this was allegedly "requested online." In fact, no such request was made online, or otherwise, and my vehicle is not a Ford F150.

For the sole purpose of attempting to identify the offenders, upon picking up the third call, the agent was advised to send me an email, and my email address was provided. At no time was that agent provided with consent to call my cellphone. Shortly thereafter, an email was received from michael.brand@tocowarranty.com, providing an "estimate" for a so-called "Yellow Plan." In fact, no estimate was requested. The estimate identified Warrantech as the service contract in which ToCo Warranty sells, and Wesco as the insurer.

The alleged "warranty" that ToCo Warranty sought to sell is actually not a warranty at all. It is a "Vehicle Service Contract," which is considered insurance in Massachusetts. A license is required to sell insurance in Massachusetts. Specifically, G.L. c. 175 § 162I specifically states, "A person shall not sell, solicit or negotiate insurance in the commonwealth for any class or classes of insurance unless the person is licensed for that line of authority in accordance with sections 162H to 162X, inclusive."

ToCo Warranty is not licensed to sell insurance in Massachusetts. Selling insurance in Massachusetts without a license is a violation of G.L. c. 176D, and G.L. c. 93A, the Massachusetts Consumer Protection Act, as it is an unfair and deceptive to sell insurance in Massachusetts without a license. To the extent ToCo Warranty would attempt to deny that it is selling "insurance" for Warrantech, and that it is not the exclusive agent acting on behalf of Warrantech, such would be contrary to its own admissions filed with the California Secretary of State. A filing on May 18, 2018 states ToCo Warranty's "type of business" is "Insurance, and a filing on May 14, 2020 states that ToCo Warranty's "type of business" is "Tele/Direct marketing for Warrantech." Likewise, a document filed by ToCo Warranty with the Massachusetts Secretary of State, dated December 31, 2019, also represents the type of business as "Tele/Direct marketing for Warrantech." It is astonishing that ToCo has not registered as a seller of insurance or with the Office of Consumer Affirs and Business regulation as a telephone solicitor.

**Again, at no time was ToCo Warranty or anyone acting on their behalf provided with my prior express written consent to repeatedly call my cellphone (registered on the federal and Massachusetts do-not-call registries), using ATDS, and spoofing, which is illegal and deceptive. Moreover, at no time was ToCo Warranty provided consent.**

---

[3] Since calls were received with a delay, and disconnection, there is a basis to believe, and allege, that ToCo Warranty's direct calls used a predictive dialer, a form of ATDS.

A private right of action exists pursuant to 47 U.S.C.A. § 227(c)(5) of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 for violation of the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4). 47 C.F.R. § 64.1200(c) and (d) sets forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call. Prior to initiating telemarketing calls, the person or entity placing the call must adopt specific standards. *Id*. For example, the telemarketer "must have a written policy, available upon demand, for maintaining a do-not-call list."  A violation of subsection (d) gives rise to TCPA liability under 47 U.S.C. § 227(c)(5).

ToCo Warranty's conduct violates numerous provisions of the TCPA and the regulations promulgated thereunder, with each violation subject to separate statutory damages of not less than $500 for negligent violations, and not more than $1,500 for willful and knowing violations. It is a violation of 47 U.S.C. §227(b)(1)(A)(iii) to cause, without prior express written consent, a cellphone to be called using an automatic telephone dialing system ("ATDS") and/or a prerecorded message. Cellphone are completely off limits for automated calls. See 47 C.F.R. § 64.1200(a)(iii). Failing to state the "individual, or other entity that is responsible for initiating the call," and the contact phone number, is also a violation. See 47 C.F.R. § 64.1200(b)(1)(2). Violations of these provisions provides a basis for statutory damages under 47 U.S.C. §227(c)(5) separate from violations of the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4). In other words, there can be two violations per call, with damages of $3,000 per call.

As to the FCC's national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4), ToCo Warranty's conduct violates one or more of the following: (i) 47 C.F.R. § 64.1200(c)(2), by engaging in and/or causing a pattern or practice of initiating telephone solicitations to my cellphone while said number, at all times relevant, was listed on the FTC's do-not-call registry; (ii) 47 C.F.R. § 64.1200(d) by causing telephone solicitations to be made to my cellphone without first instituting procedures for maintaining a list of persons who do not wish to receive such calls; (iii) 47 C.F.R. § 64.1200(d)(1) by failing to provide, upon demand, a do-not-call policy; (iv) 47 C.F.R. § 64.1200(d)(3) by and through the course of initiating calls for the purposes of a telemarketing solicitation by repeatedly failing to honor do-not-call requests and continuing to call despite requests not to be called; (v) 47 C.F.R. § 64.1200(d)(4) by failing to provide a telephone number or address. Any one of the above violations are grounds for statutory damages under 47 U.S.C. § 227(c)(5).

ToCo Warranty has conducted its business in complete disregard of the TCPA and MTSA, and its conduct in any event "caused the calls to be made." Even if another party made the initial calls on its behalf, it still cannot escape liability.

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

Under the law of Massachusetts, as to torts other than negligence causing physical harm, "a principle [of a non-employee agent] is liable for the torts of his agent committed within the scope of his employment." *Red v. A.E. Little Co.*, 256 Mass. 442, 448, 152 N.E. 918, 920 (1926). See Am. Jur. 2d Agency § 264, p. 639 ("A principle is liable for the tortious acts of an agent which are done within the course and scope of the agent's employment."). Such torts include misrepresentation,[4] negligence,[5] invasion of privacy, and other intentional torts.[6] <u>The principal's liability for such tortious acts of its agents is exclusively vicarious, having been imposed by operation of law notwithstanding the principal's lack of fault or involvement in the actionable transaction.</u> *Medeiros v. Middlesex Ins. Co.*, 48 Mass. App. Ct. 51, 56-57, 716 N.E.2d 1076, 1080 (1999).

Under Federal law, the TCPA, 47 U.S.C. § 227(c)(5), creating a private cause of action for violations of the FCC's national do-not-call registry, 47 C.F.R. § 64.1200(c)(2), and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), imposes liability on the telemarketer, and on the person or entity on whose behalf the telephone calls were made. In addition to the caller, the statutory and regulatory language creates vicarious liability in the seller for the calls made by its agents. Under the TCPA, as interpreted by the FCC under federal common law, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995). In 2008, the FCC reiterated, "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991. Request of ACA International for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of a Robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)). In May of 2013, the FCC reinforced this issue. See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller ... may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). Where profitable businesses hire others in an effort to hide their role in telemarketing campaigns, the FCC has ruled, in a wide variety of situations, that companies may be held vicariously liable for calls made on their behalf, including when

---

[4] See Restatement Third, Agency §§ 7.04, 7.08, comment c. See *Haskell v. Starbird*, 152 Mass. 117, 142 N.E. 695, 696 (1890); *Rousseau v. Gelinas*, 24 Mass. App. Ct. 154, 157-158, 507 N.E.2d 265, 268 (1987); *Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 313, 518 N.E.2d 519, 525 (1988); *Putnam v. DeRosa*, 963 F.2d 480, 483-484 (1st Cir. 1992) (applying Mass. law) (principal "is liable for harm flowing from the misrepresentations of its agents, made with its actual or apparent authority.").

[5] *New England Mica Co. v. Waltham Factories*, 301 Mass. 56, 60, 16 N.E.2d 81, 83 (1938).

[6] *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 404, 558 N.E.2d 958, 967 (1990) (assault); *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1376, 33 Fed. R. Evid. Serv. 809, 20 Fed. R. Serv. 3d 409 (1st Cir. 1991) (applying Mass. law) (forged bonds).

the companies knowingly benefit from the calls. *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013) ("FCC Vicarious Liability Order").

As the FCC explained:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Id; see also id. at 6593 ("we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised")"

ToCo Warranty is properly deemed to have initiated all the calls prior to their own direct calls and is liable under a number of theories even if ToCo Warranty did not directly place all the calls. Further, it is evident the conduct was perpetrated in the course of a conspiracy, and in such instance, all conspirators are jointly and severally liable. Finally, the calls were made exclusively on behalf of Warrantech, as its selling agent, in addition to ToCo Warranty's liability as agent, Warrantech is also liable as principle.

The TCPA, 47 U.S.C. 227(b)(3) provides consumers harmed by violations of the TCPA with the right to sue, seeking statutory damages of $500 per violation, and the court can order triple damages for willful or knowing violations, or $1,500 per call. "Willfully or knowingly" requires only the intent to make calls, regardless of any intent to violate the TCPA. *Standard Mutual Ins. Co. v. Lay*, 2012 WL 1377599 (4th Dist. April 20, 2012). Under the TCPA, corporate officers may be held personally liable even though acting on behalf of the corporation. See e.g., *Hoops & Associates, P.C. v. Financial Solutions and Associates, Inc.*, 395 S.W. 3d 594 (Mo. Ct. App. E.D. 2013) reh'g and/or transfer denied (Mar. 14, 2013) and transfer denied, (Apr. 30, 2013).

ToCo Warranty, through its agents, willfully and knowingly violated the TCPA numerous times, making numerous calls using spoofing and ATDS, to a number registered on the do-not-call registry, all without consent, and making calls directly without consent. Just considering ToCo Warranty's own direct calls, of which there were seventeen (17), ToCo Warranty is liable under the TCPA for sum-certain statutory damages of not less than $8,500 ($17,000 assuming use of ATDS), subject to trebling for willful and knowing violations thereof. Here, without question, ToCo Warranty's conduct was willful and knowing, subjecting ToCo Warranty to $25,500 ($51,000 assuming use of ATDS – and

there is a basis to allege that ToCo Warranty used an ATDS) in damages under the TCPA for its own direct conduct alone.

ToCo Warranty also violated the MTSA directly, in several respects, entitling me to damages of not less than $5,000.00 per violation. Here there have been several – certainly not less than two (2) violations thereof. For example, ToCo Warranty's direct violations include, *inter alia*, failure to register as a telephone solicitor in Massachusetts, and calling a Massachusetts number registered on the Massachusetts do-not-call registry. See G.L. c. 159C, et seq., and regulations promulgated thereunder for a list of all violations. Indeed, it is not even possible to obtain the Massachusetts do-not-call registry without registering in Massachusetts as a telephone solicitor.

ToCo Warranty also violated the regulations promulgated under G.L. c. 159C; 201 CMR 12.02 (6). For example, the regulations state, "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers must institute procedures for honoring the list of Massachusetts consumers who have elected not to receive unsolicited telephonic sales calls in compliance with G.L. c. 159C and 201 CMR 12.00 et seq.," and further, that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers shall, at the beginning of such call, disclose [(b) the correct name of the telemarketing company that employs the individual telemarketer who is making the call; [and] (c) the correct name of the ultimate seller whose goods or services are being offered by means of the telemarketing call] … within the first minute of a telephonic sales call …" ToCo Warranty's call center failed to do this. Here, ToCo Warranty's agent who made the initial calls did not disclose who they were or on whose behalf they were calling, and ToCo Warranty, although it identified themselves, ToCo Warranty did not identify Warrantech or Wesco, while ToCo was selling exclusively for Warrantech and Wesco.

**The MTSA provides separate and independent jurisdiction over out-of-state or non-resident defendants to an action or proceeding thereunder. See G.L. c. 159C § 13.**

ToCo Warranty also violated the Telemarketing Sales Rule 16 CFR 310 et seq. ("TSR") in several respects. ToCo Warranty violated the TSR by "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; … the name of the seller … on behalf of which a telemarketing call is placed, and the sellers customer service telephone number…" 16 CFR 310.4 (a)(8). As a further example, ToCo Warranty violated the TSR by engaging in a "Pattern of calls." Specifically, under 16 CFR 310.4 (b)(1) of the TSR, "it is an abusive telemarketing act or practice and violation of [the TSR] for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct: (i) causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number, and … (iii) initiating any outbound telephone call to a person when: (A) That person previously has stated that he or she does not with to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered … (B) That person's telephone number is on the 'do-not-call' registry, maintained by the

Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of good or services unless the seller or telemarketer: (1) Can demonstrate that the seller has obtained the express agreement in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature of that person; or (2) Can demonstrate that the seller has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section …"

Aside from ToCo Warranty's conduct being facially unfair and deceptive, in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, the above statutory and regulatory violations are also *per se* violations of G.L. c. 93A.

The CMR states in relevant part:

Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of G.L. c. 93A, § 2 if: (1) It is oppressive or otherwise unconscionable in any respect; or … (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of thus Commonwealth protection; or (4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of G.L. c. 93A, §2.

940 C.M.R. 3.16

The calls have been harassing, interfered with sleep, invaded privacy, caused wear and tear, battery usage, and use of paid-for cell services, causing expense adequate to have standing under G.L. c. 93A. A court would likely award punitive damages, not less than twice actual damages and up to three times, under G.L. c. 93A, as to the company, its officers, and other coconspirators – separately and independently – without the right of contribution. Accordingly, in addition to damages under the TCPA and MTSA, this letter makes demand for damages under G.L. c. 93A in the amount of $10,000, which includes actual damages, i.e., phone wear and tear and pay for services, invasion of privacy, trouble and nuisance, and the time and expense researching and investigating in order to identify the offender and to write this letter to get the calls to stop, which is compensable under G.L. c. 93A. *See Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 79, 919 N.E.2d 165, 170 (2009). Review granted, 456 Mass. 1106, 925 N.E.2d 864 (2010) (litigation requiring expense of "time, money and effort" constitutes "injury" under G.L. c. 93A).

## DEMAND

This letter demands ToCo Warranty immediately provide its do-not-call policy,

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

immediately stop calling my cellphone, immediately provide the identities and contact information of all those agents or companies who made the spoofed calls on ToCo Warranty's behalf (assuming ToCo Warranty did not directly make all of the initial spoofed calls), and if ToCo Warranty is claiming it obtained my consent or information from a third party, and that party is claiming that consent was provided, that ToCo Warranty immediately provide the identity of the party along with all evidence of alleged consent, and if ToCo Warranty has commercial liability insurance, that ToCo Warranty notice its insurer, and provide that insurer's name and contact information.

In addition, this letter demands:

(i)     That ToCo Warranty, within five (5) days, pay, as required under the provisions of the TCPA, sum-certain statutory damages in the amount of $7,000, for its agent's not less than fourteen (14) violations thereof, trebled to $21,000 for willful and knowing violations thereof (seven calls, with not less than two (2) violations per call – use of ATDS, and calls to a number on the FTC's do-not-call registry);

(ii)    That ToCo Warranty, within five (5) days, pay, as required under the provisions of the TCPA, sum-certain statutory damages in the amount of $8,500, for the not less than seventeen (17) direct violations thereof, trebled to $25,500 for willful and knowing violations thereof, as a compromise;[7]

(iii)   That ToCo Warranty, within five (5) days, pay, as required under the provisions of the MTSA, sum-certain statutory damages in the amount of $15,000 for its agent's not less than three (3) violations thereof (failure to register, spoofing, and calling on Massachusetts do-not-call registry) – as a compromise;[8]

(iv)    That ToCo Warranty, within five (5) days, pay, as required under the provisions of the MTSA, sum-certain statutory damages in the amount of $10,000 for its not less than two (2) direct violations thereof (failure to register, and calling on Massachusetts do-not-call registry) – as a compromise;

(v)     That ToCo Warranty and/or its coconspirators pay actual damages, subject to G.L. c. 93A, in the amount of $10,000, in compensation for actual damages, for invasion of privacy, intrusion upon seclusion, nuisance, and other actual harms.

While an action under the TCPA and MTSA may commence immediately against all parties, in the event ToCo Warranty wishes to resolve this matter, no action will be brought before the expiration of five (5) days. With respect to the G.L. c. 93A claims, if ToCo Warranty believes the demands are unreasonable, it may investigate the facts and the law and counter with a reasonable offer of settlement within, as noted above, 30 days only in the event that ToCo Warranty has assets or a place of business in Massachusetts

---

[7] There is evidence, and a basis to allege, that ToCo Warranty used ATDS, in which case, there would be two violations per each of its calls and thus double these damages.
[8] There is a basis to seek $5,000 per each of the not less than seventeen (17) unsolicited calls as well.

as otherwise this demand is not required and a action may commence without delay.

## LITIGATION HOLD NOTICE

ToCo Warranty, and each of its officers, directors, administrators, employees, subcontractors, shareholders, agents, insurers, and successors and assigns as the case may be, and any other party who may have materials relevant to the claims described in this demand letter (the "Litigation Hold Parties"), are hereby put on notice of litigation hold. **This Litigation Hold applies to those similarly situated**.[9]

This notice extends to <u>ALL</u> the "Litigation Hold Parties" as defined *supra*. It is the responsibility of the recipient of this notice of litigation hold to properly identify and notice <u>ALL</u> the Litigation Hold Parties and immediately and properly notice them

Any and all materials or records relating to the subject of this demand letter must be retained and preserved, including but not limited to all emails, call logs, audio recordings, contracts with third parties or its agents as well as the audio records of your agents, and any alleged prior express written consent (which would be a fraud if it is claimed to exist). This notice extends to information in ToCo Warranty's custody and control relating to any and all claims by any person, company, or entity, accusing it of violating the TCPA, MTSA, or the consumer protection act of any state, or that which may be relevant to this claim. The scope of this litigation hold is broad, as aside from this claim, a class action claim is seriously being contemplated.

Accordingly, the Litigation Hold Parties must not destroy, conceal or alter any paper or electronic files or communications or data generated by and/or stored on any computer or storage media (e.g. hard disks, thumb drives, compact disks, tapes, cloud storage, etc.). Such files shall be considered to include all those devices on which communications involving company business take place, such as but not limited to computer consoles, cell phones, smart phones, tablets, laptops, whether stored on company site or elsewhere.

Communications subject to this notice of litigation hold shall include but are not limited to that sent <u>and</u> received via e-mail, chat, texts, blogs, telephone, and via websites, and including communications such as voicemails. Data shall include but are not limited to contracts with agents or third parties, contracts with customers, call records, marketing records, client communications and records, and accounting records, and all complaints, ("Discoverable Data"). Discoverable Data shall include security records as well as past, present, and future audio and/or video surveillance of those areas where Discoverable Data is kept and where access may be gained. Any changes in security policies or practices that would degrade the security of anything that may constitute Discoverable Data will be met with extreme scrutiny and would likely result is severe consequences.

---

[9] A class action is under serious consideration due to the fact that the necessary elements exist to certify a class; (1) adequate class definition, (2) ascertainability, (3) numerosity, (4) commonality, (5) typicality, (6) adequacy, and (7) with the necessary requirements in Rule 23(b).

Electronic documents and the storage media on which they reside contain relevant discoverable information beyond what may be bound in printed documents, e.g., author, creation dates, and other metadata. Therefore, even where a paper copy exists, the electronic versions are still subject to this notice of litigation hold.  Moreover, paper documents may contain unique information created after they were printed (e.g., handwriting, signatures, marginalia, drawings, annotations, or highlighting, etc.), and so even while electronic versions of these documents exist, these paper versions are relevant and subject to this notice of litigation hold.

Careful attention should be paid to the proper continued security and preservation of that involving any alleged "prior express written consent" that may be claimed (and which would be a fraud if it is claimed to exist) in any defense to the claims herein, with preservation of evidence to include: (i) authentication, i.e., the means of authenticating the identity of the person allegedly signing; (ii) security, i.e., the binding of the alleged signature to the alleged document and proof of non-alterability after the alleged signature has been fixed thereto; and (iii) record retention, i.e., that involving secure storage and those who have access, and the records and communications created as a result of any prior express written consent.

Although a motion may be brought for an order preserving documents and other data from destruction, your obligation to preserve documents and other data arises independently from any filing of a compliant, motion, or court order. In other words, the filing of a complaint or service thereof <u>is not</u> a prerequisite to compliance with a litigation hold obligation. Specifically, the duty to preserve evidence arises when that party knew or reasonably would have known that such evidence might be relevant to a possible action, and most certainly, as is the case here, at the time a party is on notice. *See, e.g., Linnen v. A.H. Robins Co., Inc.*, 10 Mass. L. Rptr. 189, 1999 WL 462015 (Mass. Super. Ct. 1999) (Brassard, J.); *Townsend v. American Insulated Panel Co., Inc.*, 174 F.R.D. 1, 3, 37 Fed. R. Serv. 3d 1166 (D. Mass. 1997)

ToCo Warranty must take every reasonable step to preserve the materials subject to this notice of litigation hold until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup media recycling policies.

With regard to data created subsequent to the date of this letter, relevant evidence should not be destroyed and you are to take the appropriate steps required to avoid destruction of such evidence. It would be wise to seek legal advice to ensure your compliance with this notice of litigation hold.

## WARNING NOTICE

Should it be discovered that ToCo Warranty failed to comply with the above notice of litigation hold, such would have severe consequences. With respect to court proceedings against ToCo Warranty, the court may award sanctions up to default judgment. See *Fletcher v. Dorchester Mut. Ins. Co.*, 437 Mass. 544, 551, 773 N.E.2d 420,

426 (2002) (saying that "if spoliation occurs in violation of a discovery order, various sanctions, including dismissal or judgment by default, may be imposed for that violation."); *Keene v. Brigham and Women's Hosp., Inc.*, 439 Mass. 223, 234-37, 786 N.E.2d 824, 833-35 (2003) (saying that in "the spoliation context (like in the discovery context), a judge has broad discretion to impose a variety of sanctions against the defendant for the breach of its statutory duty to retain the plaintiff's missing records … default judgment is committed to the sound discretion of the judge, with such sanction of default judgment being available upon a finding of willfulness or bad faith.)

**Should ToCo Warranty fail to respond within <u>five days</u> to the TCPA and MTSA demands, notice will be made to all relevant parties, and an action will be brought against all parties seeking the all statutory damages and available remedies.**

**Should ToCo Warranty fail to respond within <u>30 days</u> to this G.L. c. 93A demand (if applicable), an action will be brought against ToCo Warranty and officers in their individual personal capacities seeking, *inter alia*, treble actual damages as to each officer. In addition, court costs, and attorney fees.**

Be advised, under G.L. c. 93A, corporate officers may be held personally liable without needing to pierce the corporate vale. See *Nader v. Citron*, 372 Mass. 96, 360 N.E.2d 870 (1977) (abrogated on other grounds by, *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879 (2008)). Specifically, "corporate officers can be held personally liable for participating in unfair and deceptive business practices." *Bolen v. Paragon Plastics*, Inc., 754 F. Supp. 221, 228 (D. Mass. 1990), citing *Nader v. Citron*, 372 Mass. 96, 103, 360 N.E.2d 870, 875 (1977) (abrogated on other grounds by, *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879 (2008)) and *Manning v. Zuckerman*, 388 Mass. 8, 10, 444 N.E.2d 1262, 1263 (1983); See also, *Hoch v. Porrazzo*, 2005 Mass. App. Div. 61, 62, 2005 WL 1383340 (2005) and cases cited; *Shaw v. Yellin*, 2008 Mass. App. Div. 141, 2008 WL 2627637 (2008), decision aff'd, 75 Mass. App. Ct. 1103, 912 N.E.2d 1040 (2009) (personal liability of corporation's shareholders and officers for unfair and deceptive acts under G.L. c. 93A); *Musi v. Blair*, 2011 Mass. App. Div. 51, 2011 WL 704745 (2011) (liability under G.L. c. 93A for one who acted on behalf of company and played a key role in its operation); *Adelphia Agios Demetrios*, *LLC v. Arista Development*, LLC, 2013 WL 1622675 (D. Mass. 2013) (case involves G.L. c. 93A claims against officer of an LLC); *George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129 (D. Mass. 1998); See also *Shaw v. Yellin*, 2008 Mass. App. Div. 141, 2008 WL 2627637 (2008), decision aff'd, 75 Mass. App. Ct. 1103, 912 N.E.2d 1040 (2009).

ToCo Warranty's principle officers may be liable for claims under G.L. c. 93A, as well as under the TCPA and MTSA, whereby claims against the principle officers may be brought, these officers are also subject to personal jurisdiction in Massachusetts under the explicit statutory provisions of the MTSA, as well as the provisions of the Massachusetts Long Arm Statute, G.L c. 223A. Accordingly, should ToCo Warranty fail to respond with a reasonable offer, a complaint will be filed naming ToCo Warranty and its officers in their individual and personal capacities.

**Please <u>do not</u> send paper correspondence to either of my Martha's Vineyard Residences. Unless otherwise noticed, please direct all paper correspondence, if any, to my all-season mailing address at 103 Prospect Street, Wakefield MA 01880.**

Very Truly Yours,

Robert A. Doane

**Exhibit 5**

# Exhibit 5

# TOCO WARRANTY CORP

June 12, 2020

Robert A. Doane                                    (via regular mail and email)
103 Prospect Street
Wakefield, MA 01880
robertdoane@rcn.com

RE:    Correspondence dated May 28, 2020 and June 3, 2020

Dear Mr. Doane:

Toco Warranty Corp is in receipt of your letters.  While the company sympathizes with anyone experiencing a stressful time and desire not to be disturbed, it is apparent that the claims in your letter are quite different from the facts as we understand them.

Toco does not engage in "robo calling" or "spoofing" of phones numbers.  Toco calls only prospective customers who have first contacted the company, expressed an interest in the product that it markets, and provided consent to be contacted.  All calls originate in the US and are made under the company's phone number.

On December 6, 2019, a request was logged via Toco's online portal providing the name "Robert Doane" and using the email address robertdoane@pokemail.net.  As part of the online quote request process, the user clicked the below consent language.  This same user provided the contact phone number 508-560-8115.

*By clicking "Save & Continue", I am providing my electronic signature expressly authorizing Toco Warranty to contact me by phone (including an automatic dialing system or artificial/prerecorded voice) at the home or cell phone number above to provide info about a vehicle service contract offer (and, if I buy a plan, to call about my service, customer satisfaction, buying a new plan when mine expires, or other Toco offers). I understand I am not required to sign/agree to this as a condition to purchase.

> Save & Continue

Upon reaching the prospect Robert Doane by phone on December 9, 2019, the email contact was updated per the prospect's verbal instruction on the call to robertdoane@rcn.com.  Per your correspondence, both this email and the phone number are your correct contact information.  It is Toco position that you initiated contact with the Company via its web portal, provided your information and consent to be contacted regarding a quote for a vehicle service contract.  It is Toco's position that it has not violated any state or federal law.

I trust that this will resolve the matter.  Should you choose to act on the threats of litigation in this matter, including threats to sue individuals, Toco will vigorously defend any such action, and seek recovery of costs for any frivolous claims, as applicable.

Sincerely,

John K. Rentz
General Counsel

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

# Exhibit 6

# Exhibit 6

# TOCO WARRANTY CORP

June 23, 2020

Robert A. Doane                                        (via regular mail and email)
103 Prospect Street
Wakefield, MA 01880
robertdoane@rcn.com

            RE:     Email correspondence dated June 12, 2020

Dear Mr. Doane:

On June 12, 2020, I replied on behalf of Toco Warranty Corp to your correspondence, and
described Toco's position that on December 6, 2019, a request was logged via Toco's online
portal providing the name "Robert Doane" and using the email address
robertdoane@pokemail.net.  As part of the online quote request process, the user clicked on
consent language.  This same user provided the contact phone number 508-560-8115. Upon
reaching the prospect Robert Doane by phone on December 9, 2019, the email contact was
updated per the prospect's verbal instruction on the call to robertdoane@rcn.com.

By email reply on June 12, 2020, you replied from this same email address, and requested
additional information pertaining to the consent, including whether any IP address was captured,
and any preceding website information.   After looking further into the matter, Toco can provide
the following information:

Request submitted to Toco website was directed from Google ad id: 726630554.1575584437
ip_address: 156.96.151.132

Information entered:
Name: Robert Doane
Phone: (508) 560-8115
Address: West Tisbury, MA 02575
Email: robertdoane@pokemail.net
Vehicle Year: 2016
Vehicle Make: Ford
Vehicle Model: F150
Avg Miles Per Year: 17,500
Submitted: 12/6/2019 7:03AM

1

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

As stated in my previous letter, it is Toco's position that it has not violated any state or federal law, and acted reasonably and in reliance on the consent provided.

Sincerely,

John K. Rentz
General Counsel

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

# Exhibit 7

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

**ROBERT A. DOANE**

Martha's Vineyard Residence
Twenty-One New Lane and Seventy Blackthorn Road
West Tisbury, MA 02575
____

robertdoane@rcn.com

<u>Mailing Address</u>

103 Prospect Street
Wakefield, MA 01880                                        Facsimile 888.712.2724

2 July 2020

<u>**CONFIDENTIAL AND URGENT**</u>

<u>***Sent Via Facsimile – 817-785-6701***</u>
Ricardo Pina
Director
Warrantech Corporation
2200 Highway 121 Ste 100
Bedford, TX 76021-5983

> RE:    Immediate Demand to Cease and Desist, Immediate Demand under the
> Federal Telephone Consumer Protection Act, and the Massachusetts
> Telephone Solicitation Act; 30-day demand under the Massachusetts
> Consumer Protection Act; Notice of Litigation Hold.

Mr. Pina:

This letter is directed to Warrantech Corporation, and to each of its officers in their individual and personal capacities (collectively "Warrantech"), as well as other conspirators to the below-described common scheme, including but not limited to Toco Warranty. ("Toco"), who had already been sent a G.L. c. 93A pre-suit demand and failed to respond with a reasonable offer as G.L. c. 93A requires.[1]

I am listed on federal and state do-not-call registries. I am the trustee of several trusts with various legal obligations and responsibilities. I am the power of attorney and caretaker for my elderly parents, and stepmother who presently suffers from dementia. I am frequently in my car traveling. I have several other responsibilities requiring focus and attention. I have a sleep disorder often requiring me to sleep odd hours during the day. I do not want to be bothered, interrupted, or distracted by telephone solicitations when I have clearly expressed to the world I do not want to be bothered by them. Given my circumstances, and the requirement I answer my phone to address important and sometimes emergency matters, such calls are particularly intrusive, distracting, and disruptive, and – after making it repeatedly clear to the offenders that keep calling that I do not want to be called – are outright harassing and a severe invasion of my privacy.

---

[1] As later explained in this demand letter, Warrantech has thirty (30) days to respond to the demands made under G.L. c. 93A, before an action may commence thereunder.

Warrantech, in conspiracy with Toco Warranty, has been determined responsible for, among other things, causing, through its agents, not less than seven (7) unsolicited sales calls to my cellphone in violation of the Telephone Consumer Protection Act 47 U.S.C. §227, et seq. ("TCPA"), and the Massachusetts Telephone Solicitation Act, G.L. c 159C, et seq. ("MTSA"), both *per se* violations of the Massachusetts Consumer Protection Act, G.L. c. 93A et seq., and not less than seventeen (17) calls directly. Indeed, ToCo Warranty is making, exclusively on behalf of Warrantech, telephone solicitations to residents of Massachusetts, selling "insurance," without being registered as either an insurer or telephone solicitor, as Massachusetts law requires.

Specifically, ToCo Warranty, over the course of several weeks several weeks, in an attempt to solicit the sale of a so called "extended warranty," as agent for, and exclusively on behalf of Warrantech, caused, without my prior express written consent, numerous telemarketing calls to my cellphone (508-560-8115) listed on federal and state do-not-call registries, using automatic telephone dialing systems ("ATDS"), and spoofing, i.e., displacing the caller identification with a bogus or illegitimate non-working number, also without disclosing the identity of the party calling, or on whose behalf the party was calling, all in violation of various civil and criminal provisions of the TCPA and the MTSA, and the regulations promulgated thereunder, and – since the conduct is facially and per se unfair and deceptive – in violation of G.L. c. 93A. When these calls were answered, there would be a pause and audible click, then an agent with a foreign accent attempting to sell an "extended warranty." Despite making it clear there was no interest by way of registration on the do-not-call registry, and through immediately terminating these harassing calls, the calls continued using other various deceptive spoofed numbers. Since the offending calls continued for several weeks unabated, interest was feigned, <u>without providing actual consent</u>, for the sole purpose of trying to identify those responsible. After that interest was feigned, ToCo Warranty began directly calling my cellphone, without my consent, attempting to solicit the sales of an alleged vehicle warranty, exclusively on behalf of Warrantech.

ToCo Warranty called exclusively on behalf of Warrantech on the following dates:

1.  December 6, 2019, at 10:12 AM EST, from 855-298-8626 – left a voicemail;
2.  December 6, 2019, at 4:22 PM EST, from 855-298-8626 – missed;
3.  December 9, 2020, at 1:40 PM, from 855-298-8626 – picked up;
4.  December 13, 2019, at 11:51 AM EST, from 855-298-8626 – left a voicemail;
5.  December 17, 2019, at 5:23 PM EST, from 855-298-8626 – no one there when answered;
6.  December 18, 2019, at 5:25 PM EST, from 855-298-8626 – leaving a voicemail;
7.  December 23, 2019, at 5:17 PM EST, from 855-298-8626 – no one there when answered;
8.  December 23, 2019, at 5:19 PM EST, from 855-298-8626 – leaving a voicemail;
9.  December 27, 2019, at 5:33 PM EST, from 855-298-8626 – no one there when answered;
10. December 31, 2019, at 3:25 PM EST, from 855-298-8626 – missed;
11. January 6, 2020, at 11:47 PM EST, from 855-298-8626 – leaving a voicemail;
12. January 14, 2020, at 5:15 PM EST, from 855-298-8626 – missed;
13. February 5, 2020, at 2:52 PM EST, from 855-298-8626 – leaving a voicemail;
14. February 12, 2020, at 2:40 PM EST, from 855-298-8626 – missed;
15. February 20, 2020, at 10:31, from 855-298-8626 – leaving a voicemail;
16. February 26, 2020, at 1:45 PM EST, from 855-298-8626 – leaving a voicemail; and

17. March 5, 2020, at 5:49 PM EST, from 855-298-8626 – leaving a voicemail.[2]

On the December 6, 2019, at 10:12 AM EST voicemail, ToCo Warranty stated, in relevant part, that the message was for "Robert" and that the caller's name was "Stephen" and that he was "calling in regard to the extended warranty quote … for a Ford F150" and that this was allegedly "requested online." In fact, no such request was made online, or otherwise, and my vehicle is not a Ford F150.

For the sole purpose of attempting to identify the offenders, upon picking up the third call, the agent was advised to send me an email, and my email address was provided. At no time was that agent provided with consent to call my cellphone. Shortly thereafter, an email was received from michael.brand@tocowarranty.com, providing an "estimate" for a so-called "Yellow Plan." In fact, no estimate was requested. The estimate identified Warrantech as the service contract in which ToCo Warranty sells, and Wesco as the insurer.

The alleged "warranty" that ToCo Warranty sought to sell is actually not a warranty at all. It is a "Vehicle Service Contract," which is considered insurance in Massachusetts. A license is required to sell insurance in Massachusetts. Specifically, G.L. c. 175 § 162I specifically states, "A person shall not sell, solicit or negotiate insurance in the commonwealth for any class or classes of insurance unless the person is licensed for that line of authority in accordance with sections 162H to 162X, inclusive."

ToCo Warranty is not licensed to sell insurance in Massachusetts, nor is Warrantech. Selling insurance in Massachusetts without a license is a violation of G.L. c. 176D, and G.L. c. 93A, the Massachusetts Consumer Protection Act, as it is an unfair and deceptive to sell insurance in Massachusetts without a license. To the extent ToCo Warranty would attempt to deny that it is selling "insurance" for Warrantech, and that it is not the exclusive agent acting on behalf of Warrantech, such would be contrary to its own admissions filed with the California Secretary of State. A filing on May 18, 2018 states ToCo Warranty's "type of business" is "Insurance, and a filing on May 14, 2020 states that ToCo Warranty's "type of business" is "Tele/Direct marketing **for Warrantech**." Likewise, a document filed by ToCo Warranty with the Massachusetts Secretary of State, dated December 31, 2019, also represents the type of business as "Tele/Direct marketing for Warrantech." It is astonishing that ToCo has not registered as a seller of insurance or with the Office of Consumer Affairs and Business regulation as a telephone solicitor.

**Again, at no time was ToCo Warranty, or Warrantech, or anyone acting on their behalf of either, provided with my prior express written consent to repeatedly call my cellphone (registered on the federal and Massachusetts do-not-call registries), using ATDS, and spoofing, which is illegal and deceptive. Moreover, at no time was ToCo Warranty, or Warrantech, provided with my consent to call my cellphone to attempt to solicit business.**

---

[2] Since calls were received with a delay, and disconnection, there is a basis to believe, and allege, that ToCo Warranty's direct calls used a predictive dialer, a form of ATDS.

A private right of action exists pursuant to 47 U.S.C.A. § 227(c)(5) of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 for violation of the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4). 47 C.F.R. § 64.1200(c) and (d) sets forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call. Prior to initiating telemarketing calls, the person or entity placing the call must adopt specific standards. *Id*. For example, the telemarketer "must have a written policy, available upon demand, for maintaining a do-not-call list."   A violation of subsection (d) gives rise to TCPA liability under 47 U.S.C. § 227(c)(5).

ToCo Warranty's conduct violates numerous provisions of the TCPA and the regulations promulgated thereunder, with each violation subject to separate statutory damages of not less than $500 for negligent violations, and not more than $1,500 for willful and knowing violations. It is a violation of 47 U.S.C. §227(b)(1)(A)(iii) to cause, without prior express written consent, a cellphone to be called using an automatic telephone dialing system ("ATDS") and/or a prerecorded message. Cellphone are completely off limits for automated calls. See 47 C.F.R. § 64.1200(a)(iii). Failing to state the "individual, or other entity that is responsible for initiating the call," and the contact phone number, is also a violation. See 47 C.F.R. § 64.1200(b)(1)(2). Violations of these provisions provides a basis for statutory damages under 47 U.S.C. §227(c)(5) separate from violations of the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4). In other words, there can be two violations per call, with damages of $3,000 per call.

As to the FCC's national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4), ToCo Warranty's conduct violates one or more of the following: (i) 47 C.F.R. § 64.1200(c)(2), by engaging in and/or causing a pattern or practice of initiating telephone solicitations to my cellphone while said number, at all times relevant, was listed on the FTC's do-not-call registry; (ii) 47 C.F.R. § 64.1200(d) by causing telephone solicitations to be made to my cellphone without first instituting procedures for maintaining a list of persons who do not wish to receive such calls; (iii) 47 C.F.R. § 64.1200(d)(1) by failing to provide, upon demand, a do-not-call policy; (iv) 47 C.F.R. § 64.1200(d)(3) by and through the course of initiating calls for the purposes of a telemarketing solicitation by repeatedly failing to honor do-not-call requests and continuing to call despite requests not to be called; (v) 47 C.F.R. § 64.1200(d)(4) by failing to provide a telephone number or address. Any one of the above violations are grounds for statutory damages under 47 U.S.C. § 227(c)(5).

ToCo Warranty has conducted its business in complete disregard of the TCPA and MTSA, and its conduct in any event "caused the calls to be made." Even if another party made the initial calls on its behalf, it still cannot escape liability.

Under the law of Massachusetts, as to torts other than negligence causing physical harm, "a principle [of a non-employee agent] is liable for the torts of his agent committed within the scope of his employment." *Red v. A.E. Little Co.*, 256 Mass. 442, 448, 152 N.E. 918, 920 (1926). See Am. Jur. 2d Agency § 264, p. 639 ("A principle is liable for the tortious acts of an agent which are done within the course and scope of the agent's employment."). Such torts include misrepresentation,[3] negligence,[4] invasion of privacy, and other intentional torts.[5] The principal's liability for such tortious acts of its agents is exclusively vicarious, having been imposed by operation of law notwithstanding the principal's lack of fault or involvement in the actionable transaction. *Medeiros v. Middlesex Ins. Co.*, 48 Mass. App. Ct. 51, 56-57, 716 N.E.2d 1076, 1080 (1999).

Under Federal law, the TCPA, 47 U.S.C. § 227(c)(5), creating a private cause of action for violations of the FCC's national do-not-call registry, 47 C.F.R. § 64.1200(c)(2), and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), imposes liability on the telemarketer, and on the person or entity on whose behalf the telephone calls were made. In addition to the caller, the statutory and regulatory language creates vicarious liability in the seller for the calls made by its agents. Under the TCPA, as interpreted by the FCC under federal common law, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995). In 2008, the FCC reiterated, "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991. Request of ACA International for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of a Robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)). In May of 2013, the FCC reinforced this issue. See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). Where profitable businesses hire others in an effort to hide their role in telemarketing campaigns, the FCC has ruled, in a wide variety of situations, that companies may be held vicariously liable for calls made on their behalf, including when

---

[3] See Restatement Third, Agency §§ 7.04, 7.08, comment c. See *Haskell v. Starbird*, 152 Mass. 117, 142 N.E. 695, 696 (1890); *Rousseau v. Gelinas*, 24 Mass. App. Ct. 154, 157-158, 507 N.E.2d 265, 268 (1987); *Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 313, 518 N.E.2d 519, 525 (1988); *Putnam v. DeRosa*, 963 F.2d 480, 483-484 (1st Cir. 1992) (applying Mass. law) (principal "is liable for harm flowing from the misrepresentations of its agents, made with its actual or apparent authority.").

[4] *New England Mica Co. v. Waltham Factories*, 301 Mass. 56, 60, 16 N.E.2d 81, 83 (1938).

[5] *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 404, 558 N.E.2d 958, 967 (1990) (assault); *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1376, 33 Fed. R. Evid. Serv. 809, 20 Fed. R. Serv. 3d 409 (1st Cir. 1991) (applying Mass. law) (forged bonds).

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

the companies knowingly benefit from the calls. *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6588 (2013) ("FCC Vicarious Liability Order").

As the FCC explained:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Id; see also id. at 6593 ("we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised")"

Warrantech is properly deemed to have initiated all the calls and is liable under a number of theories even if Warrantech did not directly place all the calls. Further, it is evident the conduct was perpetrated in the course of a conspiracy, and in such instance, all conspirators are jointly and severally liable. Finally, the calls were made by ToCo Warranty exclusively on behalf of Warrantech, as its selling agent, to which Warrantech is liable as principle of its agent, Toco Warranty.

The TCPA, 47 U.S.C. 227(b)(3) provides consumers harmed by violations of the TCPA with the right to sue, seeking statutory damages of $500 per violation, and the court can order triple damages for willful or knowing violations, or $1,500 per call. "Willfully or knowingly" requires only the intent to make calls, regardless of any intent to violate the TCPA. *Standard Mutual Ins. Co. v. Lay*, 2012 WL 1377599 (4th Dist. April 20, 2012). Under the TCPA, corporate officers may be held personally liable even though acting on behalf of the corporation. See e.g., *Hoops & Associates, P.C. v. Financial Solutions and Associates, Inc.*, 395 S.W. 3d 594 (Mo. Ct. App. E.D. 2013) reh'g and/or transfer denied (Mar. 14, 2013) and transfer denied, (Apr. 30, 2013).

Warrantech, through its agents, willfully and knowingly violated the TCPA numerous times, making numerous calls using spoofing and ATDS, to a number registered on the do-not-call registry, all without consent, and making calls directly without consent. Just considering Warrantech agents own direct calls, of which there were seventeen (17), Warrantech is liable under the TCPA for sum-certain statutory damages of not less than $8,500 ($17,000 assuming use of ATDS), subject to trebling for willful and knowing violations thereof. Here, without question, ToCo Warranty's conduct, on behalf of Warrantech, was willful and knowing, subjecting Warrantech to $25,500 ($51,000

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

assuming use of ATDS – and there is a basis to allege that ToCo Warranty, on behalf of Warrantech, used an ATDS) in damages under the TCPA for its own direct conduct alone.

Warrantech's agent, Toco Warranty, also violated the MTSA directly, in several respects, entitling me to damages of not less than $5,000.00 per violation. Here there have been several – certainly not less than two (2) violations thereof. For example, violations include, *inter alia*, failure to register as a telephone solicitor in Massachusetts, and calling a Massachusetts number registered on the Massachusetts do-not-call registry. See G.L. c. 159C, et seq., and regulations promulgated thereunder for a list of all violations. Indeed, it is not even possible to obtain the Massachusetts do-not-call registry without registering in Massachusetts as a telephone solicitor.

Warrantech's agent, Toco Warranty, also violated the regulations promulgated under G.L. c. 159C; 201 CMR 12.02 (6). For example, the regulations state, "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers must institute procedures for honoring the list of Massachusetts consumers who have elected not to receive unsolicited telephonic sales calls in compliance with G.L. c. 159C and 201 CMR 12.00 et seq.," and further, that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers shall, at the beginning of such call, disclose [(b) the correct name of the telemarketing company that employs the individual telemarketer who is making the call; [and] (c) the correct name of the ultimate seller whose goods or services are being offered by means of the telemarketing call] … within the first minute of a telephonic sales call …" Here, ToCo Warranty's agent who made the initial calls did not disclose who they were or on whose behalf they were calling, and ToCo Warranty, although it identified themselves, did not identify Warrantech or Wesco, while ToCo was selling exclusively for Warrantech and Wesco.

**The MTSA provides separate and independent jurisdiction over out-of-state or non-resident defendants to an action or proceeding thereunder. See G.L. c. 159C § 13.**

Warrantech's agent, Toco Warranty, through its agent, also violated the Telemarketing Sales Rule 16 CFR 310 et seq. ("TSR") in several respects. Toco Warranty's agent violated the TSR by "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; … the name of the seller … on behalf of which a telemarketing call is placed, and the sellers customer service telephone number…" 16 CFR 310.4 (a)(8). ToCo Warranty, on behalf of Warrantech, also violated the TSR by engaging in a "Pattern of calls." Specifically, under 16 CFR 310.4 (b)(1) of the TSR, "it is an abusive telemarketing act or practice and violation of [the TSR] for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct: (i) causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number, and … (iii) initiating any outbound telephone call to a person when: (A) That person previously has stated that he or she does not with to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered … (B) That

person's telephone number is on the 'do-not-call' registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of good or services unless the seller or telemarketer: (1) Can demonstrate that the seller has obtained the express agreement **in writing**, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature of that person; or (2) Can demonstrate that the seller has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section …"

Aside from Warrantech's agent, ToCo Warranty's conduct being facially unfair and deceptive, in violation of the Massachusetts Consumer Protection Act, G.L. c. 93A, the above statutory and regulatory violations are also *per se* violations of G.L. c. 93A.

The CMR states in relevant part:

Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of G.L. c. 93A, § 2 if: (1) It is oppressive or otherwise unconscionable in any respect; or … (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of thus Commonwealth protection; or (4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of G.L. c. 93A, §2.

940 C.M.R. 3.16

The calls have been harassing, interfered with sleep, invaded privacy, caused wear and tear, battery usage, and use of paid-for cell services, causing expense adequate to have standing under G.L. c. 93A. A court would likely award punitive damages, not less than twice actual damages and up to three times, under G.L. c. 93A, as to the company, its officers, and other coconspirators – separately and independently – without the right of contribution. Accordingly, in addition to damages under the TCPA and MTSA, this letter makes demand for damages under G.L. c. 93A in the amount of $10,000, which includes actual damages, i.e., phone wear and tear and pay for services, invasion of privacy, trouble and nuisance, and the time and expense researching and investigating in order to identify the offender and to write this letter to get the calls to stop, which is compensable under G.L. c. 93A. *See Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 79, 919 N.E.2d 165, 170 (2009). Review granted, 456 Mass. 1106, 925 N.E.2d 864 (2010) (litigation requiring expense of "time, money and effort" constitutes "injury" under G.L. c. 93A).

Toco Warranty received a pre-suit 30-day G.L. c. 93A demand and in response, attempted to allege that my consent was provided on its website. In fact, my consent was

not provided on the website alleged. Toco Warranty was asked to provide whatever evidence they believed to have had. After receipt of this evidence, it was clear that the consent was fraudulent, as the IP address originated from an anonymizer. Moreover, it is clear from this evidence that no system is in place to verify that the party signing the consent electronically is in fact who they say they are. In such circumstances, it is not reasonable to rely on such consent, and it should not have been acted upon. Toco Warranty, despite requests, has also failed to provide a do-not-call policy on demand, evidencing that it does not have a policy, or measures in place to prevent making calls to those who do not want to be contacted.

## DEMAND

This letter demands Warrantech's agents immediately provide their do-not-call policies, immediately stop calling my cellphone, immediately provide the identities and contact information of all those agents or companies who made the spoofed calls (assuming Warrantech's agent, ToCo Warranty, did not directly make all of the initial spoofed calls), and if Warrantech has commercial liability insurance, that Warrantech notice its insurer, and provide that insurer's name and contact information.

In addition, this letter demands:

(i) That Warrantech, within five (5) days, pay, as required under the provisions of the TCPA, sum-certain statutory damages in the amount of $7,000, for Toco Warranty's agent's not less than fourteen (14) violations thereof, trebled to $21,000 for willful and knowing violations thereof (seven calls, with not less than two (2) violations per call – use of ATDS, and calls to a number on the FTC's do-not-call registry);

(ii) That Warrantech, within five (5) days, pay, as required under the provisions of the TCPA, sum-certain statutory damages in the amount of $8,500, for its agent's, ToCo Warranty's, not less than seventeen (17) direct violations thereof, trebled to $25,500 for willful and knowing violations thereof, as a compromise;[6]

(iii) That Warrantech, within five (5) days, pay, as required under the provisions of the MTSA, sum-certain statutory damages in the amount of $15,000 for ToCo Warranty's agent's not less than three (3) violations thereof (failure to register, spoofing, and calling on Massachusetts do-not-call registry) – as a compromise;[7]

(iv) That Warrantech, within five (5) days, pay, as required under the provisions of the MTSA, sum-certain statutory damages in the amount of $10,000 for its agent's, ToCo Warranty's not less than two (2) direct violations thereof (failure to register, and calling on Massachusetts do-not-call registry) – as a

---

[6] There is evidence, and a basis to allege, that ToCo Warranty used ATDS, in which case, there would be two violations per each of its calls and thus double these damages.
[7] There is a basis to seek $5,000 per each of the not less than seventeen (17) unsolicited calls as well.

Date Filed: 10/20/2020 2:23 PM
District Court - Cambridge
Docket Number:

compromise;

(v)    That Warrantech and/or its coconspirators pay actual damages, subject to G.L. c. 93A, in the amount of $10,000, in compensation for actual damages, for invasion of privacy, intrusion upon seclusion, nuisance, and other actual harms.

While an action under the TCPA and MTSA may commence immediately against all parties, in the event Warrantech wishes to resolve this matter, no action will be brought before the expiration of five (5) days. With respect to the G.L. c. 93A claims, if Warrantech believes the demands are unreasonable, it may investigate the facts and the law and counter with a reasonable offer of settlement within, as noted above, 30 days only in the event that Warrantech has assets or a place of business in Massachusetts as otherwise this demand is not required and a action may commence without delay.

### LITIGATION HOLD NOTICE

Warrantech has already received a litigation hold, and that litigation hold is incorporated herein by reference.

### WARNING NOTICE

To reiterate, should it be discovered that Warrantech failed to comply with the above notice of litigation hold, such would have severe consequences. With respect to court proceedings against Warrantech, the court may award sanctions up to default judgment. See *Fletcher v. Dorchester Mut. Ins. Co.*, 437 Mass. 544, 551, 773 N.E.2d 420, 426 (2002) (saying that "if spoliation occurs in violation of a discovery order, various sanctions, including dismissal or judgment by default, may be imposed for that violation."); *Keene v. Brigham and Women's Hosp., Inc.*, 439 Mass. 223, 234-37, 786 N.E.2d 824, 833-35 (2003) (saying that in "the spoliation context (like in the discovery context), a judge has broad discretion to impose a variety of sanctions against the defendant for the breach of its statutory duty to retain the plaintiff's missing records … default judgment is committed to the sound discretion of the judge, with such sanction of default judgment being available upon a finding of willfulness or bad faith.)

**Should Warrantech fail to respond within <u>five days</u> to the TCPA and MTSA demands, notice will be made to all relevant parties, and an action will be brought against all parties seeking the all statutory damages and available remedies.**

**Should Warrantech fail to respond within <u>30 days</u> to this G.L. c. 93A demand (if applicable), an action will be brought against Warrantech and its agents and their officers in their individual personal capacities seeking, *inter alia*, treble actual damages as to each officer. In addition, court costs, and attorney fees.**

Be advised, under G.L. c. 93A, corporate officers may be held personally liable without needing to pierce the corporate vale. See *Nader v. Citron*, 372 Mass. 96, 360 N.E.2d 870 (1977) (abrogated on other grounds by, *Iannacchino v. Ford Motor Co.*, 451

Mass. 623, 888 N.E.2d 879 (2008)). Specifically, "corporate officers can be held personally liable for participating in unfair and deceptive business practices." *Bolen v. Paragon Plastics*, Inc., 754 F. Supp. 221, 228 (D. Mass. 1990), citing *Nader v. Citron*, 372 Mass. 96, 103, 360 N.E.2d 870, 875 (1977) (abrogated on other grounds by, *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879 (2008)) and *Manning v. Zuckerman*, 388 Mass. 8, 10, 444 N.E.2d 1262, 1263 (1983); See also, *Hoch v. Porrazzo*, 2005 Mass. App. Div. 61, 62, 2005 WL 1383340 (2005) and cases cited; *Shaw v. Yellin*, 2008 Mass. App. Div. 141, 2008 WL 2627637 (2008), decision aff'd, 75 Mass. App. Ct. 1103, 912 N.E.2d 1040 (2009) (personal liability of corporation's shareholders and officers for unfair and deceptive acts under G.L. c. 93A); *Musi v. Blair*, 2011 Mass. App. Div. 51, 2011 WL 704745 (2011) (liability under G.L. c. 93A for one who acted on behalf of company and played a key role in its operation); *Adelphia Agios Demetrios, LLC v. Arista Development*, LLC, 2013 WL 1622675 (D. Mass. 2013) (case involves G.L. c. 93A claims against officer of an LLC); *George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129 (D. Mass. 1998); See also *Shaw v. Yellin*, 2008 Mass. App. Div. 141, 2008 WL 2627637 (2008), decision aff'd, 75 Mass. App. Ct. 1103, 912 N.E.2d 1040 (2009).

Warrantech principle officers may be liable for claims under G.L. c. 93A, as well as under the TCPA and MTSA, whereby claims against the principle officers may be brought, these officers are also subject to personal jurisdiction in Massachusetts under the explicit statutory provisions of the MTSA, as well as the provisions of the Massachusetts Long Arm Statute, G.L c. 223A. Accordingly, should Warrantech fail to respond with a reasonable offer, a complaint will be filed naming Warrantech and its officers in their individual and personal capacities.

**Please <u>do not</u> send paper correspondence to either of my Martha's Vineyard Residences. Unless otherwise noticed, please direct all paper correspondence, if any, to my all-season mailing address at 103 Prospect Street, Wakefield MA 01880.**

Very Truly Yours,

Robert A. Doane



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

Wilmington, DE 19808    OFFICIAL    USE

Certified Mail Fee    $3.55
                                                    0180
                                                    13.
Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)       $ $0.00        Postmark
☐ Certified Mail Restricted Delivery $ $0.00        Here
☐ Adult Signature Required          $ $0.00
☐ Adult Signature Restricted Delivery $ $0.00

Postage    $2.80
                                                    10/27/2020
Total Postage and Fees    $9.20

Sent To  TOCO WARRANTY C/O REG AGENT CORP SVC CO
Street and Apt. No., or PO Box No.  251 LITTLE FALLS DR
City, State, ZIP+4®  WILMINGTON DE 19808

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7017 0190 0000 2297 1242

RECEIVED
CAMBRIDGE DIVISION
NOV   5 2020
DISTRICT COURT DEPT.
CLERKS OFFICE

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

TOCO WARRANTY CORP.
C/O REGISTERED AGENT
CORPORATION SERVICE CO
251 LITTLE FALLS DR.
WILMINGTON DE, 19808

9590 9402 1440 5329 6133 74

2. Article Number (Transfer from service label)
7017 0190 0000 2297 1242

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  _Samy Azer_        ☐ Agent
                                ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
   _Samy Azer_

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature                          ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery      ☐ Registered Mail™
☐ Certified Mail®                          ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery       ☐ Return Receipt for Merchandise
☐ Collect on Delivery                      ☐ Signature Confirmation™
☐ Collect on Delivery Restricted Delivery  ☐ Signature Confirmation Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

opportunity to tell your side of the story and the Court may order that the Plaintiff receive everything requested in the Complaint. The Court may allow a motion permitting the Plaintiff take your property and/or wages. If you respond to the Complaint and appear at the hearing, you will get an impartial hearing by a judge. Even if you choose to discuss this matter with the Plaintiff (or the Plaintiff's lawyer), you should still send your Answer **within 20 days**. Even if you file an Answer, you can still reach an agreement with the Plaintiff.

6. **Legal Assistance.** You may wish to get legal help from a lawyer. **If you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.** You may also obtain information at www.mass.gov/courts/selfhelp.

7. **You can also sue the Plaintiff.** If you believe the Plaintiff owes you money or has harmed you in some way related to the lawsuit, you must describe that in your Answer. If you do not include these claims (called "Counterclaims") in your written response, **you may lose your ability to sue the Plaintiff** about anything related to this lawsuit.

8. **You or your attorney must attend all court hearings.** If you send your Answer to the Court and the Plaintiff, you will protect your rights. The Court will send you a notice telling you the date, time, and place of an impartial hearing before a judge. The judge will hear **both** sides of any arguments and schedule any additional hearings.

9. The civil number appearing on the front of this notice is the case docket number and must appear on the front of your Answer.

Witness Hon. **Robert A. Brennan** ~~Maura Fitzgerald Healey~~, First Justice on _____, 20____.

(SEAL)                                        Sharon Shelfer Casey, Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

### RETURN OF SERVICE
(for use by person making service)

On _Oct 30_ , 20_20_ , I served a copy of the within summons, together with a copy of the Complaint in this case, upon the named defendant in the following manner:

☐ Last and usual at (address)*

_____              _____
                                             (signature)
                                             ROBERT A. DONWE , PL.
                                             (name and title)
☐ In hand                                    103 PROSPECT ST, WALTHAM
                                             (address)
☐ Other: SERVED VIA CERT MAIL, RET REC       MA
         IN ACCORDANCE WITH MASS. R. CIV. P. 4(e)(3)   01820
**Please place date you make service in this box and on copy served on defendant and return original to this Court:**  | 10 | 3 0 | 2020 |

*If service is made at the last and usual place of abode, the officer shall forthwith mail first class a copy of the summons to such last and usual place of abode, and shall set forth in the return the date of mailing and the address to which the summons was sent. (G.L. c. 223, § 31).

Rev. 9/2015

**Commonwealth of Massachusetts**
**Cambridge District Court**
4040 Mystic Valley Parkway
Medford, MA 02155
(781) 306-2715

ROBERT A. DOANE
PLAINTIFF(S),

CIVIL NO. 2058CV000366

v. TOCO WARRANTY CORP,
WARRANTECH AUTO, INC,
WESCO
DEFENDANT(S)

**SUMMONS**

RECEIVED
CAMBRIDGE DIVISION

NOV 5 2020

DISTRICT COURT DEPT.
CLERKS OFFICE

THIS SUMMONS IS DIRECTED TO ___TOCO WARRANTY CORP___
(Defendant's name)

1. **This Notice is to inform you that you are being sued.** The person or business suing you is known as the Plaintiff. A copy of the Plaintiff's Complaint against you is attached and the original has been filed in the Cambridge Division of the District Court Department. You must respond to this lawsuit in writing. If you do not respond, the Plaintiff may obtain a court order requiring you to pay money or provide other relief.

2. **You must respond within 20 days to protect your rights.** In order to protect your right to defend yourself in this lawsuit, you must deliver or mail a written response called an "Answer" to both the "Clerk's Office for Civil Business, Cambridge District Court, 4040 Mystic Valley Parkway, Medford, MA 02155" and to the individual below:

ROBERT A. DOANE , at 102 PROSPECT ST, WAKEFIELD MA 01880
(name of Plaintiff or Plaintiff's attorney)                    (address)

Your Answer must be delivered or mailed within 20 days from the date the Summons was delivered to you. If you need more time to respond, you may request an extension of time in writing from the Court.

3. **Your Answer must respond to each claim made by the Plaintiff.** Your Answer is your written response to the statements made by the Plaintiff in the Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. You may agree with some of the things the Plaintiff says and disagree with other things. You may also say that you do not know whether one (or more) of the statements made in the Plaintiff's Complaint is true. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer. Even if you agree that you owe what is claimed, sending an Answer will provide you with an opportunity to participate and explain your circumstances.

4. **You must list any reason why you should not have to pay the Plaintiff what the Plaintiff asks for.** If you have any reason(s) why the Plaintiff should not get what the Plaintiff asks for in the Complaint, you must write those reasons (or "defenses") in your Answer.

5. **You may lose this case if you do not send an Answer to the Court and the Plaintiff.** If you do not mail or deliver the Answer within 20 days, you may lose this case. You will have no

Rev. 9/2015

| STATEMENT OF DAMAGES<br>G.L. c. 218, § 19A(a) | DOCKET NO. | Trial Court of Massachusetts |
|---|---|---|
| PLAINTIFF(s)<br>Robert Doane | DEFENDANT(s)<br>Toco Warranty Crp., Warrantech Auto, Inc., Wesco | DATE FILED<br>Oct 20, 2020 |
| INSTRUCTIONS: THIS FORM MUST BE COMPLETED AND FILED WITH THE COMPLAINT OR OTHER INITIAL PLEADING IN ALL DISTRICT AND BOSTON MUNICIPAL COURT CIVIL ACTIONS SEEKING MONEY DAMAGES. | COURT DIVISION<br>Cambridge District Court | |

| TORT CLAIMS | AMOUNT |
|---|---|
| A.  Documented medical expenses to date: | |
| 1. Total hospital expenses: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| 2. Total doctor expenses: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| 3. Total chiropractic expenses: . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| 4. Total physical therapy expenses: . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| 5. Total other expenses (describe) _____ | $ _____ |
| SUBTOTAL: | $ _____ |
| B.  Documented lost wages and compensation to date: . . . . . . . . . . . . . . . . . . . | $ _____ |
| C.  Documented property damages to date: . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| D.  Reasonably anticipated future medical and hospital expenses: . . . . . . . . . | $ _____ |
| E.  Reasonable anticipated lost wages: . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| F.  Other documented items of damage (describe): Act. Dmgs and Stat. Dmgs. under Tel. Cons. Prot. Act; M Tel. Sol. Act; M. Inv. Priv. Act; M. Cons. Prot. Act, bf treb & pun dmgs. | $ 50,000 |
| G.  Brief description of Plaintiff's injury, including nature and extent of injury:<br>Act. dmgs arise from unf. & dec cond from uns calls, inc; bat usg and wear tear, inv. of priv, and other hamrs, Defs failed to resp to a 30-day dmnd with reas offr. Pl. caps  dmgs bf treb. to 50,000 | |
| For this form, disregard double or treble damage claims; indicate single damages only.  **TOTAL:** | $ 50,000 |

| CONTRACT CLAIMS | AMOUNT |
|---|---|
| ☐ **This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a)** | |
| Provide a detailed description of the claim(s): _____ | $ _____ |
| | $ _____ |
| | $ _____ |
| For this form, disregard double or treble damage claims; indicate single damages only.  **TOTAL:** | $ |

| ATTORNEY FOR PLAINTIFF (OR UNREPRESENTED PLAINTIFF) | DEFENDANT'S NAME AND ADDRESS |
|---|---|
| SIGNATURE<br>Robert Doane              10/20/2020   DATE | Toco Warranty Crp., 8501 Fallbrook Ave. #225, W. Hills, CA 91304 |
| PRINT OR TYPE NAME                        B.B.O. #<br>103 Prospect Street, Wakefield, MA 01880<br>ADDRESS | Warrantech Auto, Inc. 909 3rd Ave, 33th Fl, New York NY 10022 |
| | Westco Ins. Co. 59 Maiden Ln, 43rd Fl, New York, NY 10022 |

CERTIFICATION PURSUANT TO SJC RULE 1:18: I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney on Record:                                                              Date:

12.18